**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

GARY LEE BROHL, JR.

        Debtor.

_____/

GARY LEE BROHL, JR.

        Plaintiff,

vs.

PRETTY MICHIGAN HOMES, LLC,
& DYLAN TANAKA, *et al.*,

        Defendants.

_____/

Case No. 25-47781-PRH

Chapter 13
Judge Paul R. Hage

Adv. No. 25-04172-PRH

**OPINION GRANTING PRETTY MICHIGAN HOMES, LLC'S AND
DYLAN TANAKA'S MOTION TO DISMISS**

## I.    Introduction

This matter is before the Court on *Pretty Michigan Homes, LLC's and Dylan Tanaka's Motion to Dismiss* [Doc. No. 43] (the "Motion") filed by defendants Pretty Michigan Homes, LLC ("PMH") and Dylan Tanaka ("Tanaka"). The Motion seeks to dismiss the sole claim levied against PMH and Tanaka in the *First Amended Adversary Complaint* [Doc. No. 39] (the "Amended Complaint") filed by Gary Lee Brohl, Jr. ("Plaintiff"). The Amended Complaint alleges in Count IV, styled

1

"Damages for Civil Conspiracy to Defraud Gary of His Interest in the Land Contract" (the "Civil Conspiracy Count"), that PMH, Tanaka and others engaged in a civil conspiracy to defraud Plaintiff out of his interest in certain real property. The Motion seeks dismissal of the Civil Conspiracy Count against PMH and Tanaka pursuant to Federal Rule of Civil Procedure 12(b)(6), which is applicable in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012.[1]

For the reasons detailed in this Opinion, the Court grants the Motion and dismisses the Civil Conspiracy Count as to PMH and Tanaka only.[2]

## II. Factual Background

This bankruptcy case was commenced on July 31, 2025. Plaintiff filed a prior bankruptcy case, which was dismissed on June 21, 2024. That case, like this one, was commenced amid state court litigation related to a parcel of real property located at 7985 Huron St., Taylor, Michigan (the "Property"), where Plaintiff resides.

Plaintiff's parents initially owned the Property, subject to a mortgage held by Bank of America, N.A. ("BOA"). BOA initiated foreclosure proceedings in 2017, and a sheriff's deed was recorded in favor of BOA on January 16, 2018. *See* Amended Complaint at Ex. 3. BOA initiated a summary proceedings action against

---

[1] Specific rules of the Federal Rules of Bankruptcy Procedure are identified herein as "Bankruptcy Rule __" and specific rules of the Federal Rules of Civil Procedure are identified herein as "Civil Rule __."

[2] The other defendants in this adversary proceeding are also identified as defendants in the Civil Conspiracy Count. This Opinion does not impact the Civil Conspiracy Count as to such parties.

2

Plaintiff's parents in 2019 (23rd District Court, Case No. 2019-19-02-1276-LT). This action was allegedly resolved through execution of a confidential settlement agreement on October 22, 2019.

Pursuant to such settlement, the Property was briefly conveyed to PMH via a quitclaim deed dated October 22, 2019. *See* Amended Complaint at Ex. 4. Contemporaneous with this transaction, PMH allegedly entered into a land contract with Plaintiff and his parents (the "Land Contract"). No signed version of the Land Contract has ever been made available to this Court. However, an unsigned form of land contract was attached to the Amended Complaint. That document contains the following provision:

> **Due Date.** This land contract requires that the balance is paid in its entirety at the end of the 36th month, or on September 30, 2022. All payments on this Contract shall be interest only payments and any remainder in payment of principal.

*See* Amended Complaint at Ex. 6.

PMH conveyed its interest in the Property to Plum Tree Estates, LLC ("PTE") pursuant to a second quitclaim deed dated October 7, 2019 (the "2019 Quitclaim Deed"). *See* Amended Complaint at Ex. 5. Perhaps due to a scriveners error, the 2019 Quitclaim Deed is dated two weeks prior to the date of the original quitclaim deed transferring title from BOA to PMH.

On July 11, 2023, PTE initiated forfeiture proceedings in state court (23rd District Court, Case No. 23-02-2440-SP) due to non-payment under the Land

3

Contract.  Such case was subsequently dismissed.  On December 18, 2023, PTE commenced a second forfeiture action in state court due to non-payment under the Land Contract (23rd District Court, Case No. 23-02-4632-SP).  The state court later entered a *Judgment of Possession After Land Contract Forfeiture* on January 31, 2024 in favor of PTE.[3]  *See* Amended Complaint at Ex. 19.

On March 29, 2024, PTE executed a quitclaim deed conveying its interest in the Property to Rana Group, LLC ("Rana").  *See* Amended Complaint at Ex. 20.  On July 25, 2024, Plaintiff and Rana entered into a *Residential Lease Agreement* (the "Lease") whereby Rana leased the Property to Plaintiff for a period of one year, effective August 1, 2024.[4]

In December 2024, Rana commenced an eviction action against Plaintiff for failure to pay rent under the Lease (23rd District Court, Case No. 24-02-5837-LT) (the "Eviction Action").[5]  PMH and Tanaka were not parties to the Eviction Action.  While the Eviction Action was ongoing, apparently in response to arguments made by Plaintiff that the Property was never properly transferred from PMH to PTE because the 2019 Quitclaim Deed was dated two weeks prior to the quitclaim deed

---

[3] In his claims against other defendants in this adversary proceeding, Plaintiff alleges that this judgement of possession was entered in violation of the automatic stay imposed in his first bankruptcy case.  Such arguments are not relevant for purposes of this Opinion, as Plaintiff does not allege that PMH or Tanaka violated the automatic stay.

[4] Plaintiff disputes the validity of the Lease in the Amended Complaint.  He asserts that his signature on same was procured through fraud by Rana.  *See* Amended Complaint at ¶¶ 77-78.

[5] Plaintiff and Rana filed a *Joint Submission of State Court Documents* [Doc. No. 27] in this adversary proceeding containing the relevant documents from the Eviction Action.

4

conveying title to PMH, PMH executed another quitclaim deed (the "Corrective Quitclaim Deed") which specifically states that: "**This deed is given to confirm title already vested in grantee** and accordingly is exempt pursuant to MCL 207.505(l) and MCL 207.526(n)."[6] *See* Amended Complaint at Ex. 22 (emphasis in original).

That same day, Tanaka signed an *Affidavit of Dylan Tanaka* (the "Tanaka Affidavit") in his capacity as Managing Member of PMH. The Tanaka Affidavit states, in pertinent part:

2. In 2019, Pretty Michigan Homes, LLC acquired the property commonly known as 7985 Huron Street, Taylor, Michigan, from Bank of America, N.A. At the same time, Pretty Michigan Homes, LLC conveyed the property to Plumtree Estates LLC.

3. While I do not specifically recall the exact timing of the acquisition and sale, it has always been the standard practice of Pretty Michigan Homes, LLC not to sell or transfer a property until we have first obtained title to it.

4. On June 27, 2025, I became aware of a discrepancy in the dates on the deeds – specifically, the deed from Bank of America to Pretty Michigan Homes, LLC, and the deed from Pretty Michigan Homes, LLC to Plumtree Estates LLC. The dates appearing on such deeds may suggest that the property was conveyed to Plumtree Estates LLC before we acquired title from Bank of America.

5. Although I have not yet had the chance to review Pretty Michigan Homes, LLC's complete file for this transaction, I can confidently state that, regardless of the deed dates, the deed to Plumtree Estates LLC was not delivered until after Pretty

---

[6] MCL § 207.505(l) and MCL § 207.526(n) are Michigan statutes that exempt transactions from real estate transfer taxes where such transactions are undertaken solely to "correct a flaw in title."

Michigan Homes, LLC had received the deed from Bank of America.

6.      Pretty Michigan Homes, LLC does not claim any current interest in the property.  To address any confusion caused by the deed dates, we have executed and delivered a corrective deed to Rana Group LLC to confirm and clarify Rana Group LLC's title to the property.[7]

This bankruptcy case was commenced on July 31, 2025.  On September 5, 2025, Plaintiff commenced this adversary proceeding against David Soble, PTE, PMH, Tanaka and Rana (collectively, the "Defendants").  The *Complaint* [Doc. No. 1] (the "Complaint") initially set forth three counts, but after this Court abstained from hearing Count I pursuant to 28 U.S.C. § 1334(c)(1) in its *Order Abstaining With Respect to Count I of Plaintiff's Complaint* [Doc. No. 28] (the "Abstention Order"), only two counts remained: Count II, styled "Damages for Violating the Automatic Stay" and Count III, styled "Damages for Civil Conspiracy to Defraud Gary of His Interest In the Land Contract/Property."

---

[7] Although the Tanaka Affidavit was not attached to the Amended Complaint, it was repeatedly referenced therein.  It is central to Plaintiff's claim against PMH and Tanaka and it was uploaded to the docket in this adversary proceeding at Doc. No. 27-7, pg. 18.  The Sixth Circuit Court of Appeals has held that, in reviewing a motion to dismiss, a court may consider the complaint along with any document not formally incorporated by reference or attached to the complaint as part of the pleadings if the "document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").

All Defendants filed motions seeking dismissal of the Complaint. *See* Doc. Nos. 10, 12 and 31. On January 26, 2026, the Court held a hearing on such motions. At the conclusion of the hearing, the Court gave a bench opinion and subsequently issued an *Order On Dispositive Motions* [Doc. No. 38] wherein it granted the dispositive motion of defendants Soble and PTE and denied the dispositive motions filed by defendants Rana, Tanaka, and PMH without prejudice.

In its bench opinion, the Court explained that although these latter dispositive motions were denied on procedural grounds,[8] there were serious deficiencies with respect to the sufficiency of the allegations in the Complaint as to all Plaintiff's claims against all Defendants. The Court granted Plaintiff leave to amend the Complaint to correct such deficiencies. The Court cautioned that this would be Plaintiff's last chance and that it would not be inclined to grant further amendments given where the parties were in the litigation process.[9]

---

[8] PMH and Tanaka's dispositive motion was denied because they had filed a motion for judgment on the pleadings instead of a motion to dismiss. Civil Rule 12(c) (as incorporated by Bankruptcy Rule 7012) allows a motion for judgment on the pleadings to be filed only "after the pleadings are closed…." In this adversary proceeding, the pleadings were not closed because every defendant in the action had not yet filed an answer.

[9] Plaintiff's primary counsel, Mr. Stuart Sandweiss, did not appear at the hearing on the dispositive motions. Rather, another attorney appeared on his behalf. Unfortunately, this attorney, who claimed to have reviewed the Complaint and dispositive pleadings for the first time the day before the hearing, was thoroughly unprepared to respond substantively to the dispositive motions or any of the Court's questions regarding the Complaint.

On February 9, 2026, Plaintiff filed the Amended Complaint. Two additional parties (Soble, PLC and Yassmen Sobh) were named as defendants. The Amended Complaint contains four counts, specifically:

- Count I: Declaratory Judgment[10]
- Count II: Damages for Violating the Automatic Stay (against the Soble Defendants- Soble, Sobh, and Soble, PLC)
- Count III: Fraud/Fraud in the Inducement (against Rana)
- Count IV: Civil Conspiracy (against All Defendants)

PMH and Tanaka filed the Motion on February 11, 2026. The Motion seeks dismissal, pursuant to Civil Rule 12(b)(6), of the Civil Conspiracy Count as to them.[11] That count alleges that PMH and Tanaka conspired with the other Defendants to defraud Plaintiff out of whatever interest he had in the Property under the Land Contract. Plaintiff filed his *Response to Defendants Pretty Michigan Homes, LLC and Dylan Tanaka's Motion to Dismiss* [Doc. No. 50] (the "Response") on February 25, 2026.[12]

## III. Standard of Review

In deciding a Civil Rule 12(b)(6) motion, a court must (1) view a complaint in the light most favorable to the plaintiff, and (2) take all well-pled factual

---

[10] Plaintiff states in the Amended Complaint that Count I was included merely "to avoid confusion," acknowledging that the Court previously abstained from hearing Count I in the Abstention Order. Plaintiff also states that the relief purportedly sought in Count I is now moot.
[11] PMH and Tanaka reserve the right to seek sanctions against Plaintiff and/or his counsel. Because such relief is merely reserved, not sought, the Court takes no action in this regard.
[12] Using the discretion provided under Local Bankruptcy Rule 9014-1(e), the Court has determined that a hearing on the Motion is not necessary as oral argument would not aid in the resolution of this dispute.

allegations as true. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted). A complaint must provide "more than labels and conclusions.... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. In short, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 545).

Where, as here, fraud is alleged, a heightened pleading standard exists under Civil Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). For affirmative misrepresentations, Civil Rule 9(b) requires a plaintiff to allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *McKee v. General Motors, LLC*, 376 F.Supp.3d 751, 760 (E.D. Mich. 2019) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir.

2012)).  This means that the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942–43 (6th Cir. 2009) (quotation marks and citation omitted).

Moreover, the Sixth Circuit Court of Appeals has held that the "[p]leading requirements governing civil conspiracies are relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "[V]ague and conclusory allegations unsupported by material facts will not be sufficient" to state a claim for conspiracy. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

## IV. Discussion

The Amended Complaint alleges in the Civil Conspiracy Count that PMH and Tanaka engaged in a civil conspiracy to defraud Plaintiff out of whatever interest he had in the Property under the Land Contract.

A civil conspiracy is "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Swain v. Morse*, 332 Mich. App. 510, 530, 957 N.W.2d 396 (2020) (citation omitted).  It "requires proof of an intentional agreement," *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323,

1341 (E.D. Mich. 2011), but the agreement need not be express. *See Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). "[T]he plaintiff must show that 'there is a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.'" *Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 924 (E.D. Mich. 2019) (quoting *Hooks*, 771 F.2d at 944).

However, "[l]iability does not arise from a civil conspiracy alone; rather, it is necessary to prove a separate, actionable tort." *Swain*, 332 Mich. App. at 530 n. 13; *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384, 670 N.W.2d 569 (2003); Michigan Non-Standard Jury Instr. Civil § 15:1 (listing as an element that must be proved, "The defendant committed a separate, actionable tort as part of the conspiracy"). If a plaintiff fails to establish the separate actionable tort, then the civil conspiracy claim must be dismissed. *Advoc. Org. for Patients & Providers*, 257 Mich. App. at 384. Furthermore where, as here, the underlying tort is fraudulent in nature, courts have required that plaintiffs pleading civil conspiracy meet the heightened pleading requirements of Civil Rule 9(b) to survive dismissal. *See Fremont Reorganizing Corp.*, 811 F. Supp. 2d at 1323 (citations omitted).

### a. **Plaintiff failed to sufficiently plead that the actions of PMH and Tanaka were fraudulent**

Plaintiff asserts that the underlying tort to support his Civil Conspiracy Count is fraud. Plaintiff clarified his position in the Response. *See* Response at pg. 13

("Here the Complaint alleges that Defendants participated in a scheme with the other Defendants … to defraud Gary out of his interest in the Property").

In Michigan, the elements of fraud that must be pled with particularity pursuant to Civil Rule 9(b) are:

(1)    that defendant made a material representation;
(2)    that it was false;
(3)    that when defendant made the material representation, he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion;
(4)    that he made the representation with the intention that it should be acted upon by plaintiff;
(5)    that plaintiff acted in reliance upon the representation; and
(6)    that he thereby suffered injury.

*Hi–Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976); *see also Cassidy v. Cassidy*, 318 Mich. App. 463, 498, 899 N.W.2d 65 (2017) (stating the elements of "conspiracy to commit fraud"). "The absence of any one of these elements 'is fatal to a recovery.'" *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 784 (E.D. Mich. 2014) (quoting *Hi-Way Motor*, 398 Mich. at 336).

The Court gave Plaintiff a second opportunity to cure the pleading deficiencies with respect to its claims. Nevertheless, the Amended Complaint is wholly devoid of factual allegations that support Plaintiff's assertion that PMH and/or Tanaka committed, or participated in a conspiracy to commit, fraud. This is particularly true given the heightened pleading standard imposed by Civil Rule 9(b).

The Amended Complaint is voluminous; it contains 139 paragraphs and over 39 pages. The only substantive allegations in the Amended Complaint with respect to actions taken by PMH and Tanaka are as follows:

(1) PMH recorded the 2019 Quitclaim Deed conveying the Property to PTE, which deed stated that the consideration paid was only $1.00, even though the Property was actually acquired for a more significant amount, *see* Amended Complaint at ¶¶ 31, 33, 137(a);

(2) PMH executed the Corrective Quitclaim Deed in 2025 conveying any interest that it had in the Property to Rana, *Id.* at ¶¶ 88, 137(j); and

(3) Tanaka prepared the Tanaka Affidavit to address any confusion caused by the earlier deed dates, which confirmed that PMH had not asserted any interest in the Property since 2019, *Id.* at ¶ 137(n).

Based solely upon these actions, Plaintiff alleges that PMH and Tanaka are part of a conspiracy to defraud him out of his alleged interest in the Property. However, none of these acts, taken separately or in combination with other actions alleged in the Amended Complaint, support Plaintiff's claim that PMH or Tanaka defrauded him or participated in a fraudulent scheme. The Court will address each of the above-referenced allegations in turn.

First, Plaintiff alleges that the 2019 Quitclaim Deed "conveying PMH's interest in the Property to PTE was fraudulent as the received consideration was $1.00 even though, upon information and belief, the purchase price (and the value of the Property) was well in excess of $1.00." Amended Complaint at ¶ 33. Plaintiff

argues that the 2019 Quitclaim Deed was illegal "as it avoided the property transfer tax that is required by MCL § 207.502 and/or MCL § 207.504." *Id.*

The statement that consideration of only $1.00 was given in exchange for the Property could be a false statement. Regardless, from the Plaintiff's perspective as an alleged land contract vendee, it is unclear how such statement could be material. And no allegations in the Amended Complaint suggest that: (i) the statement was made with the intention that it should be acted upon by Plaintiff, (ii) Plaintiff in fact acted in reliance upon the statement, or (iii) Plaintiff suffered any injury because of that statement. *See, e.g.*, *Cummins v. Robinson Twp.,* 283 Mich. App. 677, 695–96, 770 N.W.2d 421 (2009) (establishing that a claim of fraudulent misrepresentation requires the plaintiff's reasonable reliance upon the false representation).[13]

---

[13] Although the Court need not decide this issue, it has doubts that stating consideration for $1.00 on a deed constitutes illegal conduct. Under Michigan law, a conveyance of real property requires a bargained-for exchange. *See Gen. Motors Corp. v. Dep't of Treasury, Rev. Div.*, 466 Mich. 231, 238, 644 N.W.2d 734 (2002). That exchange must include some benefit obtained, detriment suffered, or service done on each side of the transaction. *Id.* at 239. The Michigan Supreme Court has stated that "[a] cent or a pepper corn, in legal estimation, would constitute a valuable consideration." *Id.*

Without endorsing the practice, the Court understands that it is not uncommon for parties to real estate transactions to identify $1.00 or nominal consideration on a deed simply as a means of demonstrating that some consideration was provided as required by MCL § 565.152, which sets forth the requirements for quitclaim deeds. Indeed, the Michigan Court of Appeals has suggested that the listing of nominal consideration on a quitclaim deed is adequate. *See McConnell v. McConnell*, 2012 WL 5857297, at *4 (Mich. Ct. App. Oct. 30, 2012) ("Here, the quitclaim deed provided that valuable consideration for transfer of the property was one dollar. Generally, courts do not inquire into the sufficiency of consideration[.]"). The designation of consideration on a deed is not conclusive regarding the actual consideration provided for the real property. *In re Rudell Estate*, 286 Mich. App. 391, 410, 780 N.W. 2d 884 (2009).

14

Second, Plaintiff alleges that the execution and delivery of the Corrective Quitclaim Deed, wherein PMH conveyed any remaining interest it had in the Property to Rana, evidences a conspiracy to commit fraud because PMH was attempting "to convince the State Court that Rana owned the Property." *See* Amended Complaint at ¶¶ 88, 137(j). The Corrective Quitclaim Deed states on its face that: "**This deed is given to confirm title already vested in grantee** and accordingly is exempt pursuant to MCL 207.505(l) and MCL 207.526(n)." Amended Complaint at Ex. 22 (emphasis in original).

There is nothing fraudulent in this statement or, more generally, the filing of the Corrective Quitclaim Deed. The stated intent of the language opining on title to the Property was to assert that no real estate transfer tax was due on the corrective deed transaction because, the parties believed, no actual transfer was occurring since the Property had been conveyed years earlier. *See* MCL § 207.505(l); MCL § 207.526 (contemplating that no transfer tax is due when a corrective deed is filed merely to "correct a flaw in title"). The Corrective Quitclaim Deed says nothing about the validity of Plaintiff's purported continuing interest in the Property under the Land Contract.

On a motion to dismiss, however, the question is whether this action plausibly suggests fraud. It does not. Plaintiff does not allege in the Amended Complaint that the Corrective Quitclaim Deed was a false, material representation – a critical

15

element to establish fraud.  Even if the Corrective Quitclaim Deed was, for whatever reason, executed and delivered to convince the state court that Rana was the owner of the Property, a statement on a quitclaim deed from a party who expressly claims that it has not asserted an interest in the Property for over half a decade would carry little weight, if any, in the Eviction Action.  It is not material.  In any event, Plaintiff certainly never relied on those statements.  In fact, he vehemently disputed them.  And it's not clear how he was harmed by the filing of the Corrective Quitclaim Deed.

Finally, the Tanaka Affidavit likewise does not support a claim of fraud.  Quite clearly, Tanaka drafted it to explain the Corrective Quitclaim Deed, likely to avoid PMH getting dragged into a title dispute over a parcel of Property that, it asserted, it only momentarily had an interest in over five years earlier.  Indeed, Tanaka stated:

> Pretty Michigan Homes, LLC does not claim any current interest in the property.  To address any confusion caused by the deed dates, we have executed and delivered a corrective deed to Rana Group LLC to confirm and clarify Rana Group LLC's title to the property.

Tanaka Affidavit at ¶ 6.  Contrary to the assertions of Plaintiff in his Response, the Tanaka Affidavit takes no position whatsoever regarding whether the Land Contract existed or, if so, what interest Plaintiff retained under such contract.

The Amended Complaint does not plausibly allege that any of the statements in the Tanaka Affidavit were material or that they were false.  Nor does it allege that Tanaka knew the statements were false when made.  The Amended Complaint does not allege that such statements were made to induce Plaintiff to act and it does not

16

allege that Plaintiff relied on such statements. And, again, it's not clear how Plaintiff was harmed by the statements made in the Tanaka Affidavit.

In summary, the Court concludes that Plaintiff failed to sufficiently plead that the limited actions of PMH and Tanaka referenced in the Amended Complaint were fraudulent. Without an underlying fraud claim involving such actions, Plaintiff's Civil Conspiracy Count fails.

**b. Plaintiff failed to allege sufficient facts to infer a conspiracy**

As noted, "vague and conclusory allegations unsupported by material facts will not be sufficient" to state a claim for conspiracy. *Gutierrez*, 826 F.2d at 1538. Plaintiff must plead facts that plausibly show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL– CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (quoting *Hooks*, 771 F.2d at 944); *Mercurio v. Huntington Nat'l Bank*, 347 Mich. App. 662, 689, 16 N.W.3d 748 (2023) (affirming the dismissal of the civil conspiracy count where the allegations did not indicate that the defendant "was engaged in a concerted action" with the other defendants to commit fraud).

In this case, the Amended Complaint contains only broad, conclusory statements that PMH and Tanaka participated in a conspiracy. Plaintiff has alleged

17

no specific facts which would allow this Court to plausibly infer that PMH or Tanaka "shared in [a] general conspiratorial objective" to defraud him out of his alleged land contract interest or that they committed "an overt act … in furtherance of [such a] conspiracy that caused injury" to Plaintiff. *Hooks*, 771 F.2d at 944.

The Amended Complaint covers a time-period spanning from 2018 to the present. Based on the allegations therein, it appears that PMH and Tanaka were uninvolved with the other parties to this adversary proceeding for most of this period. Indeed, PMH has not asserted any interest in the Property since 2019, *see* Tanaka Affidavit at ¶ 2, and neither PMH nor Tanaka were parties to the other transactions or state court lawsuits described in the Amended Complaint.

Other than the two executed quitclaim deeds which, as the Court has already addressed, do not plausibly suggest fraud as to Plaintiff, it is not alleged that PMH or Tanaka acted together with the other Defendants at all. Tanaka's execution of the Tanaka Affidavit does not plausibly suggest a conspiracy to defraud Plaintiff out of any interest he had in the Property; it does not even mention the alleged Land Contract. Rather, it simply confirms that PMH had not asserted an interest in the Property for many years and explains why the Corrective Quitclaim Deed was filed.

In short, the Court holds that Plaintiff has not sufficiently alleged in the Amended Complaint that either PMH or Tanaka conspired with any of the Defendants to defraud him out of any interest that he had in the Property.

## V.     Conclusion

The Court concludes that Plaintiff failed to sufficiently plead that the limited actions of PMH and Tanaka referenced in the Amended Complaint were fraudulent as to him.  Nor did he plead specific facts to support the allegation that they conspired with the other Defendants to defraud him.  As such, the Court grants the Motion under Civil Rule 12(b)(6).  PMH and Tanaka are dismissed from this adversary proceeding with prejudice.  Plaintiff's request in the Response for leave to amend his complaint a second time is denied.  The Court will enter a separate order consistent with this Opinion.

**Signed on March 23, 2026**



/s/ Paul R. Hage
_____
**Paul R. Hage**
**United States Bankruptcy Judge**