## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

GARY LEE BROHL, JR.

          Debtor.

_____/

GARY LEE BROHL, JR.

          Plaintiff,

v.

SOBLE, PLC, PLUM TREE ESTATES, LLC
& RANA GROUP, LLC, *et al.*,

          Defendants.

_____/

Case No. 25-47781-PRH

Chapter 13
Judge Paul R. Hage

Adv. No. 25-04172-PRH

## OPINION REGARDING DEFENDANT RANA GROUP, LLC'S MOTION TO DISMISS AND DEFENDANTS DAVID SOBLE, SOBLE PLC, YASSMEN SOBH AND PLUM TREE ESTATES, LLC'S <u>MOTION TO DISMISS</u>

### I.    Introduction

Before the Court are two separate, but related, dispositive motions. Both motions seek dismissal of the *First Amended Adversary Complaint* [Doc. No. 39] (the "<u>Amended Complaint</u>") filed by Gary Lee Brohl, Jr. ("<u>Plaintiff</u>") pursuant to Federal Rule of Civil Procedure 12(b)(6), which is applicable in this adversary

1

proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012(b).[1]  The first

of these motions is *Defendants David Soble, Soble PLC, Yassmen Sobh, and Plum

Tree Estates, LLC's Motion to Dismiss* [Doc. No. 48] (the "Soble Motion") filed by

defendants David Soble ("Soble"), Soble PLC ("SPLC"), Yassmen Sobh ("Sobh"

and, collectively with Soble and SPLC, the "Soble Defendants") and Plum Tree

Estates ("PTE").  The second motion is *Defendant Rana Group, LLC's Motion to

Dismiss Plaintiff's Amended Complaint* [Doc No. 46] (the "Rana Motion") filed by

Rana Group, LLC ("Rana").

The Amended Complaint alleges in Count II, styled "Damages for Violating

the Automatic Stay" (the "Stay Violation Count"), that the Soble Defendants violated

the automatic stay imposed by sections 362(a) and/or 1301(a) during Plaintiff's

previous bankruptcy case.

The Amended Complaint alleges in Count III, styled "Fraud/Fraud In The

Inducement" (the "Fraud Count"), that Rana made fraudulent representations that

induced Plaintiff into signing a lease agreement with respect to the property at issue

in this adversary proceeding and, later, made fraudulent statements to various courts

regarding Plaintiff's interest in that property.

---

[1] The Bankruptcy Code is set forth in 11 U.S.C. § 101 *et seq.*  Specific sections of the Bankruptcy Code are identified herein as "section __."  Similarly, specific rules of the Federal Rules of Bankruptcy Procedure are identified herein as "Bankruptcy Rule __" and specific rules of the Federal Rules of Civil Procedure are identified herein as "Civil Rule __."

Count IV of the Amended Complaint, styled "Damages for Civil Conspiracy to Defraud Gary of His Interest in the Land Contract" (the "Civil Conspiracy Count"), alleges that the Soble Defendants, PTE, Rana and other parties who were previously dismissed from this adversary proceeding[2] engaged in a civil conspiracy to defraud Plaintiff out of his interest in the real property.

For the reasons detailed in this Opinion, the Court denies the Soble Motion in part, allowing the Stay Violation Count to proceed against the Soble Defendants and grants the Soble Motion in part, dismissing the Civil Conspiracy Count against the Soble Defendants and PTE. The Court grants the Rana Motion and dismisses both the Fraud Count and the Civil Conspiracy Count against Rana.

## II. Relevant Factual Background

Prior to the commencement of this bankruptcy case, Plaintiff filed at least one prior bankruptcy case [Case No. 24-40226] (the "First Bankruptcy Case"), which was dismissed on June 21, 2024. That case, like this one, was commenced amid state court litigation related to a parcel of real property located at 7985 Huron St., Taylor, Michigan (the "Property"), where Plaintiff reportedly resides to this date.

---

[2] Pretty Michigan Homes, LLC ("PMH") and Dylan Tanaka were originally named as defendants in the Civil Conspiracy Count. On March 23, 2026, the Court issued its *Order On Pretty Michigan Homes, LLC and Dylan Tanaka's Motion to Dismiss* [Doc. No. 55], along with a written opinion [Doc. No. 54], which dismissed such parties from the adversary proceeding with prejudice.

Plaintiff's parents initially owned the Property, subject to a mortgage held by Bank of America, N.A. ("BOA").  BOA initiated foreclosure proceedings in 2017, and a sheriff's deed was recorded in favor of BOA on January 16, 2018.  *See* Amended Complaint at Exhibit 3.  BOA initiated a summary proceedings action against Plaintiff's parents in 2019 (23rd District Court, Case No. 2019-19-02-1276-LT).  This action was allegedly resolved through execution of a confidential settlement agreement on October 22, 2019.

Pursuant to such settlement, the Property was briefly conveyed to PMH via a quitclaim deed dated October 22, 2019.  *Id.* at Exhibit 4.  Contemporaneous with this transaction, PMH allegedly entered into a land contract with Plaintiff and his parents (the "Land Contract").  No signed version of the Land Contract has been presented to the Court in this adversary proceeding.[3]  However, an unsigned form of land contract was attached to the Amended Complaint.  *Id.* at Exhibit 6.  That document contains the following provision:

> **Due Date.** This land contract requires that the balance is paid in its entirety at the end of the 36th month, or on September 30, 2022. All payments on this Contract shall be interest only payments and any remainder in payment of principal.

*Id.*

---

[3] For a lengthy period of time, there was uncertainty as to whether an executed version of the Land Contract existed.  The Court understands that, in late December 2025, Soble produced a signed version of the Land Contract in connection with a deposition that he took in the Eviction Action, and all parties now have a signed version of the contract in their possession.

PMH conveyed its interest in the Property to PTE pursuant to a second quitclaim deed dated October 7, 2019 (the "2019 Quitclaim Deed"). *Id.* at Exhibit 5. On December 18, 2023, PTE commenced a forfeiture action in state court due to Plaintiff's alleged failure to make payments under the Land Contract (23rd District Court, Case No. 23-02-4632-SP) (the "Forfeiture Action"). A hearing was scheduled in the Forfeiture Action for January 10, 2024. Less than an hour before the scheduled hearing, Plaintiff filed the First Bankruptcy Case. Minutes later, Plaintiff informed Soble of the bankruptcy filing. *Id.* at Exhibit 15.

Plaintiff alleges that Soble responded via e-mail stating "Susan Brohl was the owner of the home. Gary Brohl does not own the home" and "We will proceed, but notify the court of Gary's bankruptcy." *Id.* at ¶¶ 53-57. Plaintiff further alleges that an attorney from Soble's office, Sobh, appeared at the hearing which was ultimately adjourned. *Id.*

Plaintiff alleges that, on January 24, 2024, Sobh appeared for the adjourned hearing in the Forfeiture Action. He alleges that Sobh "requested a default/default judgment" at that hearing and then submitted a proposed judgment of possession against Plaintiff's parents, but not Plaintiff. *Id.* at ¶¶ 62-63. The state court entered a *Judgment of Possession After Land Contract Forfeiture* on January 31, 2024 in favor of PTE and against Plaintiff's parents only. *Id.* at Exhibit 19. Plaintiff

acknowledges that the state court did not issue a judgment against him in the Forfeiture Action.  *See Id.* at ¶ 65.

On March 29, 2024, PTE executed a quitclaim deed conveying its interest in the Property to Rana (the "2024 Quitclaim Deed").  *Id.* at Exhibit 20.  Plaintiff alleges that, at some point in July 2024, a representative of Rana spoke with his neighbor and then left a note at the Property which purportedly said that "Rana owned the Property to the exclusion of [Plaintiff] and that [Plaintiff] needed to vacate" the Property.  *Id.* at ¶ 75.  Plaintiff alleges that he contacted Rana and, thereafter, a representative of Rana coerced him to sign a lease agreement with respect to the Property.  On July 25, 2024, Plaintiff executed a *Residential Lease Agreement* (the "Lease") whereby he leased the Property from Rana for a period of one-year, effective August 1, 2024.

In December 2024, Rana commenced an eviction action against Plaintiff due to his alleged failure to pay rent under the Lease (23rd District Court, Case No. 24-02-5837-LT) (the "Eviction Action").[4]  The Eviction Action was stayed by the commencement of this bankruptcy case on July 31, 2025.  Rana filed a *Motion For Relief From Automatic Stay* [Doc. No. 18] (the "Stay Relief Motion") in this Court seeking relief from the automatic stay so that it could continue the Eviction Action

---

[4] Plaintiff and Rana filed a *Joint Submission of State Court Documents* [Doc. No. 27] in this adversary proceeding containing the relevant documents from the Eviction Action.

6

in state court.  The Court granted the Stay Relief Motion pursuant to an order [Doc. No. 42] entered on September 11, 2025.

The Court understands that the Eviction Action was recently dismissed by the parties, purportedly based on testimony given by Soble on December 29, 2025 confirming that a Land Contract existed with respect to the Property and that Plaintiff was a party to such Land Contract.  The Court understands that the parties now agree that the Land Contract, while expired, exists.  The Court further understands that Plaintiff and Rana are involved in discussions regarding treatment of the Land Contract in Plaintiff's chapter 13 plan.  Plaintiff continues to reside at the Property.

## III.  This Adversary Proceeding

On September 5, 2025, Plaintiff commenced this adversary proceeding.  The *Complaint* [Doc. No. 1] (the "Complaint") initially set forth three counts against various parties, but after this Court abstained from hearing Count I pursuant to 28 U.S.C. § 1334(c)(1) in its *Order Abstaining with Respect to Count I of Plaintiff's Complaint* [Doc. No. 28] (the "Abstention Order"), only two counts remained: Count II, styled "Damages for Violating the Automatic Stay" and Count III, styled "Damages for Civil Conspiracy to Defraud Gary of His Interest In the Land Contract/Property."

All defendants filed motions seeking dismissal of the Complaint. *See* Doc. Nos. 10, 12 and 31.  On January 26, 2026, the Court held a hearing on such motions.

At the conclusion of the hearing, the Court gave a bench opinion and subsequently issued an *Order On Dispositive Motions* [Doc. No. 38] wherein it granted the dispositive motion of defendants Soble and PTE and denied the dispositive motions filed by the other defendants, without prejudice, on procedural grounds.[5]

In its bench opinion, the Court explained that, although these latter dispositive motions were denied on procedural grounds, there were serious deficiencies with respect to the sufficiency of the allegations in the Complaint as to all Plaintiff's claims. The Court granted Plaintiff leave to amend the Complaint to correct such deficiencies. The Court cautioned that this would be Plaintiff's last chance and that it would not be inclined to grant further amendments.[6]

On February 9, 2026, Plaintiff filed the Amended Complaint. Two additional parties (SPLC and Sobh) were named as defendants. The Amended Complaint contains four counts, specifically:

- Count I: Declaratory Judgment[7]

---

[5] For example, Rana's initial dispositive motion was denied because it was not timely filed. Civil Rule 12(b) requires that "a motion [under Civil Rule 12(b)] must be made before pleading if a responsive pleading is allowed." Prior to filing its Civil Rule 12(b)(6) Motion to Dismiss, Rana filed an answer to the Complaint thereby making its motion procedurally improper.

[6] Plaintiff's primary counsel, Mr. Stuart Sandweiss, did not appear at the hearing on the dispositive motions. Rather, another attorney appeared on his behalf. Unfortunately, this attorney, who claimed to have reviewed the Complaint and dispositive pleadings for the first time the day before the hearing, was thoroughly unprepared to respond substantively to the dispositive motions or any of the Court's questions regarding same.

[7] Plaintiff states in the Amended Complaint that Count I was included merely "to avoid confusion," acknowledging that the Court previously abstained from hearing Count I in the Abstention Order and that the relief purportedly sought in Count I is now moot.

- Count II: Damages for Violating the Automatic Stay (against the Soble Defendants)
- Count III: Fraud/Fraud in the Inducement (against Rana)
- Count IV: Civil Conspiracy (against all defendants)

The Soble Motion was filed on February 23, 2026. The Soble Motion seeks dismissal of both the Stay Violation Count and the Civil Conspiracy Count pursuant to Civil Rule 12(b)(6). The Rana Motion was filed that same day, and seeks dismissal of both the Fraud Count and the Civil Conspiracy Count pursuant to Civil Rule 12(b)(6). Plaintiff filed his *Omnibus Response to Defendant Rana Group LLC's Motion to Dismiss and Defendants David Soble, Soble PLC, Yassmen Sobh, and Plum Tree Estates, LLC's Motion to Dismiss and Brief in Support* [Doc. No. 52] (the "Response") on March 9, 2026.

A hearing on the Soble Motion and the Rana Motion was initially scheduled for April 20, 2026. Based on a stipulation submitted by the parties, the Court adjourned the hearing on the Soble Motion and the Rana Motion until May 11, 2026. At the conclusion of the May 11, 2026 hearing, at which all parties were represented by counsel, the Court took both matters under advisement.

### IV. Standard of Review

In deciding a Civil Rule 12(b)(6) motion, a court must (1) view a complaint in the light most favorable to the plaintiff, and (2) take all well-pled factual allegations as true. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted). A complaint must provide "more than labels and conclusions.... Factual

9

allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. In short, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 545).

Where, as here, fraud is alleged, a heightened pleading standard exists under Civil Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). For affirmative misrepresentations, Civil Rule 9(b) requires a plaintiff to allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012). This means that the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

10

fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (quotation marks and citation omitted).

Similarly, the Sixth Circuit Court of Appeals has held that the "[p]leading requirements governing civil conspiracies are relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "[V]ague and conclusory allegations unsupported by material facts will not be sufficient" to state a claim for conspiracy. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

## V. Discussion

### a. Plaintiff has alleged sufficient facts to allow the Stay Violation Count to survive dismissal under Civil Rule 12(b)(6)

Immediately upon the filing of a bankruptcy, a stay of certain actions against the debtor and their estate goes into effect. *See* 11 U.S.C. § 362(a)(1). Section 362(a) defines what constitutes a stay violation. Among other things, section 362(a) "automatically stays, with respect to all entities, the commencement or continuation … of a judicial … proceeding against the debtor…." 11 U.S.C. § 362(a)(1). In addition, section 362(a)(3) stays "any act to obtain possession of property of the estate or property from the estate…." 11 U.S.C. § 362(a)(3).

Additionally, in a chapter 13 case such as the First Bankruptcy Case, section 1301(a) imposes a co-debtor stay, providing:

> [A]fter the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor … unless—
>
> (1) such individual became liable on … such debt in the ordinary course of such individual's business; or
>
> (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

11 U.S.C. § 1301(a). The codebtor stay is a statutory injunction in favor of non-debtors—in chapter 13 cases only—who are jointly liable on a debt of the debtor, and like the automatic stay of section 362(a), is enforceable by the court. "A knowing violation of the codebtor stay is contempt of court, punishable by damages including attorney's fees." *See* 8 COLLIER ON BANKRUPTCY, ¶ 1301.06 (16th ed. 2024).

Pursuant to section 362(k)(1), a debtor may recover actual damages from a creditor who willfully violates the automatic stay. That subsection provides:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).[8]

"A party acts willfully by taking any action prohibited by § 362(a) after the party receives notice of the bankruptcy filing." *In re Banks,* 253 B.R. 25, 29 (Bankr.

---

[8] None of the parties briefed the issue of the extent to which section 362(k) applies to a violation of the co-debtor stay imposed under section 1301(a).

E.D. Mich. 2000) (citing *In re Briggs*, 143 B.R. 438, 462 (Bankr. E.D. Mich. 1992);

*see also TranSouth Financial Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687-88

(6th Cir. BAP 1999). Chief Judge Opperman succinctly summarized the applicable

law regarding stay violation damages under section 362(k)(1) in a recent opinion:

> A party violates the automatic stay by taking any action prohibited by Section 362(a) after receiving notice of a bankruptcy filing. "Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay." To show liability under Section 362(k), the Debtor need only show actual notice of the bankruptcy and an act in violation of the stay. "Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages."

*In re Gillespie*, 2026 WL 544805 at *3 (Bankr. E.D. Mich. Feb. 26, 2026) (internal

citations omitted). Courts have held that the automatic stay "requires creditors to

take affirmative steps to halt or reverse any pending suits or collection efforts begun

prior to bankruptcy, including garnishment, repossession of a vehicle, and

foreclosure of a mortgage or lien." *Id.* (citing *In re Banks,* 253 B.R. at 30).

It is undisputed that Plaintiff filed the First Bankruptcy Case on January 10,

2024, less than an hour before a scheduled hearing in the Forfeiture Action. It is also

undisputed that notice of the bankruptcy filing was provided to Soble and to the state

court minutes later. *See* Amended Complaint at ¶¶ 67, 98. The automatic stay and

the co-debtor stay went into effect upon the filing of the First Bankruptcy Case and

remained in place until June 21, 2024, when that bankruptcy case was dismissed.

Plaintiff alleges in the Amended Complaint that one or more of the Soble Defendants willfully took the following actions in violation of the stay imposed by section 362(a) and/or section 1301(a):

1. "Defendant Soble sent an attorney in his office (Sobh) to appear and to proceed on the [Forfeiture Action] – upon information and belief against [Plaintiff's] co-Debtors" and failed to seek administrative closure of the case, *Id.* at ¶ 99;

2. "Instead of ensuring that the [Forfeiture Action] got closed due to the bankruptcy stay, Sobh / SPLC had the State Court adjourn the [Forfeiture Action] for two weeks (to January 24, 2024)," *Id.* at ¶ 100;

3. "On January 24, 2024 Sobh / SPLC appeared for a second hearing on the [Forfeiture Action]" and "requested a default / default judgment," *Id.* at ¶¶ 62, 101); and

4. "Following the January 24, 2024 hearing (on or about January 30, 2024) Defendant Sobh, agent for SPLC, again violated the automatic stay by submitting a proposed 'Judgment of Possession After Land Contract Forfeiture'" against Plaintiff's parents (but not against Plaintiff). *Id.* at ¶¶ 63, 102.

The Soble Defendants seek dismissal of the Stay Violation Count for two primary reasons, specifically: (i) the Amended Complaint alleges no actionable stay violation, and (ii) Plaintiff has suffered no injury because of the alleged stay violation because the state court's January 31, 2024 *Judgment of Possession After Land Contract Forfeiture* was entered only against his parents—not against him—and he remains in possession of the Property.

With respect to the first argument, the Court agrees with the Soble Defendants that allegations regarding the mere attendance at the January 10th and January 24th hearings in the Forfeiture Action, the adjournment of the earlier hearing, and the failure to request administrative closure of the Forfeiture Action at such hearing are not sufficient, if true, to establish a violation of the automatic stay. *See, e.g.*, *In re Jackson*, 637 B.R. 487, 488 (Bankr. E.D. Mich. 2022) ("merely adjourning a state court matter, or failing or refusing to cause a pending state court lawsuit to be closed or dismissed, without more, is not a violation of the automatic stay") (citing *Worthy v. World Wide Fin. Servs., Inc.*, 347 F. Supp. 2d 502, 508-09 (E.D. Mich. 2004), *aff'd*, 192 F. App'x 369 (6th Cir. 2006) (holding that postponement of a sheriff's sale in accordance with state law does not violate section 362)); *see also Taylor v. Slick*, 178 F.3d 698, 701-02 (3d Cir. 1999); *First Nat'l Bank of Anchorage and Alaska Title Guar. Co. v. Roach (In re Roach)*, 660 F.2d 1316, 1318-19 (9th Cir. 1981); *Perez v. Deutsche Bank Nat'l Trust Co. (In re Perez)*, 556 B.R. 527, 536-37 (B.A.P. 1st Cir. 2016).

However, Plaintiff's allegations in the Amended Complaint are not limited to attendance at the hearings in the Forfeiture Action or failure to request closure of such action. Rather, Plaintiff alleges affirmative acts taken by the Soble Defendants that could potentially violate the automatic stay and/or the co-debtor stay. Specifically, Plaintiff alleges that the Soble Defendants requested entry of a default

15

judgment and judgment of possession against Plaintiff's parents at the January 24th hearing and submitted a proposed *Judgment of Possession After Land Contract Forfeiture* that was subsequently entered by the state court. *See* Amended Complaint at ¶¶ 62, 63, 101 and 102. These allegations, if true, could constitute violations of the co-debtor stay imposed by section 1301(a).

The Soble Defendants assert that, contrary to Plaintiff's allegations, they took no actions to obtain the default judgment or judgment of possession against the Plaintiff's parents. Rather, they assert that "the state court had already been presented with the judgment, was informed of the bankruptcy, acknowledged it, and nevertheless decided to sign the judgment." *See* Soble Motion at p. 6. If true, then the Soble Defendants likely did not violate the automatic stay or the co-debtor stay. The Court concludes that there is a factual dispute as to the post-petition conduct of the Soble Defendants.[9]

The Soble Defendants also argue that the Stay Violation Count must fail because Plaintiff cannot demonstrate that he was injured by their actions. The Amended Complaint alleges the following with respect to damages:

---

[9] Counsel for the Plaintiff, Mr. Stuart Sandweiss, has represented to the Court and others since at least September 2024 that Plaintiff is in the process of ordering a transcript from the state court for the January 24, 2024 hearing, which transcript may shed light on what was actually stated on the record at such hearing. At the hearing on the Soble Motion—held eight months later—Mr. Sandweiss advised the Court that his client still has not ordered a copy of the state court transcript. The Soble Defendants, likewise, have not produced a copy of the transcript.

> As a direct and proximate result of Defendants' willful violations of the automatic stay Plaintiff … suffered damages – including costs and attorney fees for defending the [Eviction Action] in the State Court, and Defending the [Stay Relief Motion] in this Court that resulted because the Soble Defendants obtained a default judgment in the 2nd Case in violation of the automatic stay.

*See* Amended Complaint at ¶ 111. In addition to actual damages, Plaintiff seeks punitive damages, which may be awarded "in appropriate circumstances" under section 362(k)(1).

"An individual seeking damages under § 362(k) must prove, by a preponderance of the evidence, that damages were 'proximately caused by and reasonably incurred as a result of the violation of the automatic stay.'" *In re Shrum*, 597 B.R. 845, 856 (Bankr. E.D. Mich. 2019) (citing *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010); *Archer v. Macomb Cnty. Bank*, 853 F.2d 497 (6th Cir. 1988)). "A bare statement by the debtor that he incurred damages without some form of supporting evidence as to the amount will not satisfy the evidentiary requirements of § 362(k)." *In re Baer*, 2012 WL 2368698 at * 10 (6th Cir. BAP June 22, 2012) (finding that the debtor failed in his "burden of requesting damages in a certain amount and of supporting that claim with evidence").

The Court has significant doubts about what damages, if any, Plaintiff will be able to prove as a result of the alleged co-debtor stay violations. First, it is not alleged that any party ever took any action to enforce the default judgments obtained

17

against Plaintiff's parents while the stay was in place. Importantly, no judgment was ever entered against Plaintiff. Now that a signed copy of the Land Contract has been produced, the parties appear to agree that Plaintiff's land contract interest, although expired, was never forfeited. And Plaintiff continues to reside at the Property (despite his alleged repeated failure to make payments under the Land Contract, the Lease or otherwise) over two years later.

Plaintiff asserts damages due to costs and attorney fees incurred in the Eviction Action in the state court and the Stay Relief Motion in this bankruptcy case. But such actions were commenced by Rana—not the Soble Defendants—and the Soble Defendants were not even parties to such litigation. The actions were commenced long after the automatic stay from the First Bankruptcy Case ceased to exist and after PTE transferred its ownership interest in the Property to Rana pursuant to the 2024 Quitclaim Deed, which transfer was not prohibited by the automatic stay. And such litigation related primarily to the Lease with Rana that Plaintiff voluntarily signed. Despite Plaintiff's proclamations to the contrary, it is difficult to see how legal fees incurred in later litigation with Rana were "proximately caused" by any of the alleged actions taken by the Soble Defendants in violation of the co-debtor stay.

Notwithstanding the foregoing, this Court believes it is premature to draw a conclusion as to Plaintiff's damages at the pleading stage of this litigation, where the

Court must construe the Amended Complaint in the light most favorable to the Plaintiff and must accept all the factual allegations contained in the Amended Complaint as true. The Court holds that the Amended Complaint alleges sufficient facts to plead a claim against the Soble Defendants under section 362(k). As a result, the Soble Motion will be denied as to the Stay Violation Count.

### b. Plaintiff fails to sufficiently plead the Fraud Count against Rana

Count III of the Amended Complaint alleges a claim for fraud/fraud in the inducement against Rana only. In Michigan, the elements of fraud that must be pled with particularity pursuant to Civil Rule 9(b) are:

(1)  that defendant made a material representation;
(2)  that it was false;
(3)  that when defendant made the material representation, he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion;
(4)  that he made the representation with the intention that it should be acted upon by plaintiff;
(5)  that plaintiff acted in reliance upon the representation; and
(6)  that he thereby suffered injury.

*Hi–Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976). Further, an action for fraud must be predicated upon a false statement relating to a past or existing fact. *Id.* at 336. Finally, to establish a claim of fraudulent misrepresentation, the plaintiff must have reasonably relied on the false representation. *See Cummins v. Robinson Twp.*, 283 Mich. App. 677, 695–96, 770 N.W.2d 421 (2009). "The absence of any one of these elements 'is fatal to a

19

recovery.'" *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 784 (E.D. Mich. 2014) (quoting *Hi-Way Motor*, 398 Mich. at 336).

In support of its Fraud Claim, Plaintiff identifies the following representations allegedly made by Rana:

1. "[A]t some point in approximately July 2024, someone from Rana spoke with [Plaintiff's] neighbor and then left a note at the Property – falsely alleging that Rana owned the Property to the exclusion of [Plaintiff] (which was not true) and that [Plaintiff] needed to vacate the Property." *See* Amended Complaint at ¶¶ 75, 117.

2. "Subsequently, the Rana representative appeared at the Property and ultimately coerced [Plaintiff] to sign a lease by convincing [Plaintiff] that he needed to sign the "Lease" in order to be able to stay in his house – even though there was a valid Land Contract in place." *See* Amended Complaint at ¶¶ 77, 119.

3. Rana made various misrepresentations to the State Court and this Court regarding the existence of a valid Land Contract. *See* Amended Complaint at ¶¶127, 128, 130.

The Court concludes that the alleged representations are not sufficient to establish a claim for fraud/fraud in the inducement.

First, the alleged representations cited by Plaintiff are not statements of fact at all. Rather, they are legal conclusions related to the ownership of the Property and Plaintiff's right to continue to reside at the Property. As noted, a false representation for purposes of establishing a fraud claim must relate to a *past or existing fact*. *See Cummins*, 283 Mich. App. at 697. Numerous courts applying Michigan law have held that "legal opinions ... are not false representations

concerning an existing or past fact and cannot constitute fraud." *Id.* (citing *Hi–Way Motor*, 398 Mich. at 336; *Michaels v. Amway Corp.*, 206 Mich. App. 644, 652, 522 N.W.2d 703 (1994) (alleged misrepresentation of the meaning of a contract term could not constitute fraud because not predicated on a statement of past or existing fact); *Kamalnath v. Mercy Mem. Hosp. Corp.*, 194 Mich. App. 543, 554, 487 N.W.2d 499 (1992) (statements related to future action and to opinion were not actionable as fraud because they are not predicated on a statement relating to a past or an existing fact); *see also Beirut Traders Co. v. Neiman Marcus Grp., Inc., Maersk, Inc.*, 2009 WL 3460674 at *10 (E.D. Mich. Oct. 22, 2009) (holding that "representations of law… are not actionable" for fraud); *Geiling v. Wirt Fin. Servs., Inc.*, 2014 WL 8473822 at *57 (E.D. Mich. Dec. 31, 2014), *report and recommendation adopted in part*, 2015 WL 1529866 (E.D. Mich. Mar. 31, 2015), *aff'd,* 2017 WL 6945559 (6th Cir. June 8, 2017) ("[O]pinions, including legal opinions, are not statements of fact that can give rise to fraud."); *Tomei v. Dario Mortgages, Inc.*, 2024 WL 2439030 at *7 (Mich. Ct. App. May 23, 2024) (same).

Second, Plaintiff could not have *reasonably* relied upon the alleged representations. "There can be no fraud where a person has the means to determine that a representation is not true." *Nieves v. Bell Indus., Inc.*, 204 Mich. App. 459, 464, 517 N.W.2d 235 (1994) (citing *Montgomery Ward & Co. v. Williams*, 330 Mich. 275, 47 N.W.2d 607 (1951); *Webb v. First of Michigan Corp.*, 195 Mich. App. 470,

474, 491 N.W.2d 851 (1992)). Put another way, "someone who knows that a representation is false cannot rely on that representation. Such knowledge prevents not only reasonable reliance, it prevents any reliance at all." *Phinney v. Perlmutter*, 222 Mich. App. 513, 537, 564 N.W.2d 532 (1997), *overruled in part on other grounds by Garg v. Macomb Co. Community Mental Health Servs.*, 472 Mich. 263 (2005).

In this case, Plaintiff, with the assistance of Mr. Sandweiss, has alleged for years (both in the state courts and in the bankruptcy court) that a valid Land Contract existed with respect to the Property notwithstanding the fact that he apparently failed to maintain a signed copy of that contract. He filed the First Bankruptcy Case less than an hour before the start of a hearing in the Forfeiture Action to forestall the forfeiture of his interest under that Land Contract. He knew—or should have known—that the state court *Judgment of Possession After Land Contract Forfeiture* was entered only against his parents, not against him. *See* Amended Complaint at ¶ 65. And he knew that no forfeiture of his interest in the Land Contract had occurred because, as he alleges in the Amended Complaint, Soble contacted Mr. Sandweiss on March 29, 2024 and stated: "Brohl Land Contract proceedings relating to Gary Brohl have been set aside." *Id.* at ¶ 71.

Approximately three months later, Plaintiff voluntarily entered into the Lease with Rana. His allegation that he did so because he relied on incorrect legal

conclusions allegedly made by "someone with Rana" regarding the ownership of the Property and his right to continue to reside there is simply not reasonable.[10]  Plaintiff knew that he had signed a Land Contract, *see MacDonald v. Thomas M. Cooley L. Sch.*, 724 F.3d 654, 665 (6th Cir. 2013) ("Unreasonable reliance includes relying on an alleged misrepresentation that was expressly contradicted in a written contract that a plaintiff reviewed and signed."), and he had recently sought to protect his rights under that contract in both the state court and the bankruptcy court.  To the extent that Plaintiff was confused about his legal rights under the Land Contract after the Forfeiture Action and the First Bankruptcy Case were concluded, he had counsel (Mr. Sandweiss) that he could consult.

In summary, even if the alleged assertions by Rana regarding its ownership of the Property and Plaintiff's rights to continue to reside at the Property were knowingly false, Plaintiff had repeatedly and recently asserted that such representations were not true and he had the means to determine their truthfulness. Therefore, any reliance on the allegations could not have been reasonable.

With respect to the third set of alleged misrepresentations referenced in the Amended Complaint (misrepresentations to the state court and this Court regarding

---

[10] To be clear, it is uncertain whether any statements made by Rana regarding Plaintiff's rights with respect to the Property were knowingly false.  Rana has asserted that it was unaware of the existence of the Land Contract until many months later, when the existence of the contract was raised as a defense in the Eviction Action with respect to the Lease.

the existence of a valid Land Contract), such allegations are not pled with sufficient specificity to support a fraud claim. *See McKee v. General Motors, LLC*, 376 F.Supp.3d 751, 760-61 (E.D. Mich. 2019) (Civil Rule 9(b) requires a plaintiff to plead "'the who, what, when, where, and how' of the alleged omission.").[11] General statements about alleged misrepresentations made over periods of many months do not suffice for purposes of pleading fraud.

Plaintiff also did not plead that he relied to his detriment on Rana's alleged assertions to the courts regarding the existence of the Land Contract. Nor could he. To the contrary, Plaintiff repeatedly asserted in the Eviction Action and in the hearings on the Stay Relief Motion that the Lease that he executed with Rana was not valid because a prior, valid, Land Contract existed.

In the Amended Complaint, Plaintiff alleges that the *courts* relied on these representations. *See* Amended Complaint at ¶¶ 129 ("the false representations to the Courts were made with the intent that the Courts would rely on the representations and under circumstances on which the Courts should reasonably have expected to rely,") and ¶ 132 ("[b]y setting hearings, issuing rulings and requiring actions by [Plaintiff], the Courts relied on the false representations made by Rana."). Suffice it to say, arguments to courts regarding the parties' respective rights with respect to the

---

[11] Regarding the Eviction Action and the Stay Relief Motion generally, the Court sees nothing fraudulent in Rana's efforts to exercise its rights and remedies under the Lease that Plaintiff executed with it after Plaintiff's prior defaults.

Property, which arguments were always opposed by Plaintiff, cannot support a claim that Plaintiff was defrauded.

Because Plaintiff failed to sufficiently plead the essential elements of its fraud/fraud in the inducement claim, the Fraud Count must be dismissed under Civil Rule 12(b)(6).  The Rana Motion is granted as to the Fraud Count.

### c. Plaintiff fails to sufficiently plead the Civil Conspiracy Count against Rana, PTE or the Soble Defendants

A civil conspiracy is "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means."  *Swain v. Morse*, 332 Mich. App. 510, 530, 957 N.W.2d 396 (2020) (citation omitted).  It "requires proof of an intentional agreement," *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1341 (E.D. Mich. 2011), but the agreement need not be express.  *See Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).  "[T]he plaintiff must show that 'there is a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.'" *Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 924 (E.D. Mich. 2019) (*quoting Hooks*, 771 F.2d at 944).

However, "[l]iability does not arise from a civil conspiracy alone; rather, it is necessary to prove a separate, actionable tort."  *Swain,* 332 Mich. App. at 530 n.13; *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365,

384, 670 N.W. 2d 569 (2003); Michigan Non-Standard Jury Instr. Civil § 15:1 (listing as an element that must be proved, "The defendant committed a separate, actionable tort as part of the conspiracy."). If a plaintiff fails to establish the separate actionable tort, then the civil conspiracy claim must be dismissed. *Advoc. Org. for Patients & Providers*, 257 Mich. App. at 384. Moreover, "[o]ne who innocently does an act which furthers the tortious purpose of another is not acting in concert with him." *Rosenberg v. Rosenberg Bros. Special Account*, 134 Mich. App. 342, 354, 351 N.W. 2d 563 (1984).

### i. Plaintiff failed to sufficiently plead that Rana, PTE and/or the Soble Defendants acted fraudulently

Plaintiff has asserted that the underlying claim with respect to his alleged Civil Conspiracy Count against Rana, PTE and the Soble Defendants[12] is fraud. As stated above, the elements of fraud are:

(1)    that defendant made a material representation;
(2)    that it was false;
(3)    that when defendant made the material representation, he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion;
(4)    that he made the representation with the intention that it should be acted upon by plaintiff;
(5)    that plaintiff acted in reliance upon the representation; and
(6)    that he thereby suffered injury.

---

[12] As noted, PMH and Tanaka are no longer parties to this adversary proceeding pursuant to the Court's March 23, 2026, *Order On Pretty Michigan Homes, LLC and Dylan Tanaka's Motion to Dismiss* [Doc. No. 55].

*Hi–Way Motor Co.,* 398 Mich. at 336. Where, as here, the underlying tort for a civil conspiracy claim is fraudulent in nature, courts have required that plaintiffs pleading civil conspiracy meet the heightened pleading requirements of Civil Rule 9(b) to survive dismissal. *See Fremont Reorganizing Corp.*, 811 F. Supp. 2d at 1336 (citations omitted).

For the reasons detailed above, the Fraud Count against Rana is dismissed. No additional facts were alleged against Rana in the Civil Conspiracy Count to support Plaintiff's claims that Rana engaged in a civil conspiracy to defraud Plaintiff. Because the Amended Complaint as a whole fails to sufficiently alleged that Rana acted fraudulently, the Civil Conspiracy Count must be dismissed as to Rana.

Plaintiff did not assert a separate fraud claim against PTE or the Soble Defendants; they were not identified as defendants in the Fraud Count. With respect to the Civil Conspiracy Count, Plaintiff specifically alleged that PTE and/or the Soble Defendants made the following representations:

(1) "On March 29, 2024 Soble sent an email (Exhibit 21) to Brohl's counsel stating that 'Brohl Land Contract proceedings relating to Gary Brohl have been set aside' (which was a patently false statement) – meaning that Brohl still had a valid land contract interest in the Property;" and

(2) "In order to illegally avoid paying the transfer tax for the Property, the PTE QCD that allegedly conveyed the Property from PTE to Rana stated that the consideration was $1.00 even though, according to an Affidavit filed in the State Court by Rana's principal Rana Matar, Rana acquired the Property from PTE for 'tens of thousands of dollars.'"

*See* Amended Complaint at ¶¶ 137(c), (e).

Based on these alleged misrepresentations, Plaintiff alleges that PTE and/or the Soble Defendants are part of a conspiracy to defraud him out of his interest in the Property. However, these representations, taken separately or in combination with other allegations in the Amended Complaint, do not support Plaintiff's claim that PTE and/or the Soble Defendants defrauded him or participated in a fraudulent scheme. The Court will address each of the above referenced allegations in turn.

First, with respect to the March 29, 2024 e-mail from Soble regarding the land contract "proceedings relating to Gary Brohl [being] set aside," such representation is arguably true. While it is not clear exactly what Soble meant by this statement, it is undisputed that *no action was ever taken against Plaintiff* in the Forfeiture Action. Moreover, once the default judgments were entered against Plaintiff's parents on January 30, 2024, no further action was taken against them or the Property with respect to those judgments.

Putting aside the apparent truthfulness of Soble's representation, the Amended Complaint fails to allege that: (i) the representation was made with the intention that it should be acted upon by Plaintiff, (ii) Plaintiff relied on this representation, or (iii) that Plaintiff suffered any injury because of any reliance on this representation. And, as discussed above, any reliance on this representation would have been unreasonable as Plaintiff had the means to determine whether the statement was

28

true—he was a party to the Forfeiture Action and the statement was made not to him but to Mr. Sandweiss, an experienced attorney. *See Nieves,* 204 Mich. App. at 464.

Second, the statement on the 2024 Quitclaim Deed that consideration of only $1.00 was given in exchange for the Property may well be a false statement. Regardless, from Plaintiff's perspective as a land contract vendee with respect to such Property, it is unclear how such statement could possibly be material. And, again, no allegations in the Amended Complaint suggest that: (i) the representation was made with the intention that it should be acted upon by Plaintiff, (ii) Plaintiff in fact acted in reliance upon the representation, or (iii) Plaintiff suffered any injury because of that representation.[13]

### ii. Plaintiff failed to allege sufficient facts to infer a conspiracy

---

[13] Although the Court need not decide this issue, it has doubts that stating consideration for $1.00 on a deed constitutes illegal conduct. Under Michigan law, a conveyance of real property requires a bargained-for exchange. *See Gen. Motors Corp. v. Dep't of Treasury, Rev. Div.*, 466 Mich. 231, 238, 644 N.W.2d 734 (2002). That exchange must include some benefit obtained, detriment suffered, or service done on each side of the transaction. *Id.* at 239. The Michigan Supreme Court has stated that "[a] cent or a pepper corn, in legal estimation, would constitute a valuable consideration." *Id.*

Without endorsing the practice, the Court understands that it is not uncommon for parties to real estate transactions to identify $1.00 or nominal consideration on a deed simply as a means of demonstrating that some consideration was provided as required by MCL § 565.152, which sets forth the requirements for quitclaim deeds. Indeed, the Michigan Court of Appeals has suggested that the listing of nominal consideration on a quitclaim deed is adequate. *See McConnell v. McConnell*, 2012 WL 5857297, at *4 (Mich. Ct. App. Oct. 30, 2012) ("Here, the quitclaim deed provided that valuable consideration for transfer of the property was one dollar. Generally, courts do not inquire into the sufficiency of consideration[.]"). The designation of consideration on a deed is not conclusive regarding the actual consideration provided for the real property. *In re Rudell Estate*, 286 Mich. App. 391, 410, 780 N.W. 2d 884 (2009).

As noted, "vague and conclusory allegations unsupported by material facts will not be sufficient" to state a claim for conspiracy. *Gutierrez*, 826 F.2d at 1538. Plaintiff must plead facts that plausibly show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL–CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (quoting *Hooks*, 771 F.2d at 944); *Mercurio v. Huntington Nat'l Bank*, 347 Mich. App. 662, 689-90, 16 N.W.3d 748 (2023) (affirming the dismissal of the civil conspiracy count where the allegations did not indicate that the defendant "was engaged in a concerted action" with the other defendants to commit fraud).

In this case, the Amended Complaint contains only broad, conclusory statements that Rana, PTE, or the Soble Defendants participated in a conspiracy. Plaintiff has alleged no specific facts which would allow this Court to plausibly infer that Rana, PTE, or the Soble Defendants "shared in [a] general conspiratorial objective" to defraud him out of his alleged land contract interest or that they committed "an overt act … in furtherance of [such a] conspiracy that caused injury" to Plaintiff. *Hooks*, 771 F.2d at 944.

The Amended Complaint covers a time period spanning from 2018 to the present. Between and amongst the various Defendants, very little interaction is

alleged.[14]  From 2018 to 2023, PTE collected payments from Plaintiff as the land contract vendor.  Then, in 2023 and early 2024, SPLC filed two separate land contract forfeiture actions in state court on behalf of PTE.  Several months after the conclusion of the second land contract forfeiture action, the 2024 Quitclaim Deed was executed transferring title from PTE to Rana.  Thereafter, it is not specifically alleged that there were any interactions whatsoever between PTE, the Soble Defendants and Rana. The Court holds that the Amended Complaint does not sufficiently allege that Rana, PTE, or the Soble Defendants conspired with each other to defraud Plaintiff out of any interest that Plaintiff had in the Property.

Based on the foregoing, Count IV will be dismissed in its entirety.

V.    **Conclusion**

When viewed in the light most favorable to the Plaintiff, and taking all well-pled factual allegations as true, the Court concludes that Plaintiff sufficiently plead a violation of the automatic stay as to the Soble Defendants.  As such, the Soble Motion is denied as to the Stay Violation Count.

---

[14] Indeed, the "Statement of Facts" in the Amended Complaint is separated into three parts: (i) Part I - Background Information Regarding the Property At Issue, (ii) Part II – The Prior Legal Proceedings, and (iii) Part III – Rana Group's Involvement.  Rana is not mentioned at all in Parts I and II, where PTE and the Soble Defendants were primarily involved.  And the Soble Defendants are barely mentioned in Part III.  Put simply, even the organization of the Amended Complaint suggests very little interaction among the defendants.

The Court concludes that Plaintiff failed to state a claim as to the Fraud Count and the Civil Conspiracy Count. The Rana Motion and the Soble Motion are granted with respect to those two counts under Civil Rule 12(b)(6). Rana is dismissed from this adversary proceeding with prejudice. Plaintiff's request in the Response for leave to amend his complaint a second time is denied.

The Court will enter a separate order consistent with this Opinion.

**Signed on May 12, 2026**

/s/ Paul R. Hage

**Paul R. Hage**
**United States Bankruptcy Judge**