**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

GARY LEE BROHL, JR.

Debtor.
______________________________/

Case No. 25-47781-PRH

Chapter 13
Judge Paul R. Hage

GARY LEE BROHL, JR.

Plaintiff,

v.

SOBLE, PLC, *et al.*,

Defendants.
______________________________/

Adv. No. 25-04172-PRH

# OPINION REGARDING MOTIONS FOR SUMMARY JUDGMENT

## I. Introduction

Before the Court are two separate, but related, motions for summary judgment. First, debtor Gary Lee Brohl, Jr. (the "Plaintiff") filed *Plaintiff's Motion for Summary Judgment Against the Soble Defendants and Brief in Support* [Doc. No. 92] ("Plaintiff's Motion") asking the Court to grant him summary judgment against the remaining defendants in this adversary proceeding, Soble, PLC, a law firm, and David Soble ("Soble") and Yassmen Sobh ("Sobh"), two attorneys at the law firm

(collectively, the "Defendants")[1] as to liability on Count II of the *First Amended Adversary Complaint* [Doc. No. 39] (the "Amended Complaint") for: (i) alleged violations of the automatic stay under section 362(a) of the Bankruptcy Code,[2] and (ii) alleged violations of the co-debtor stay under section 1301(a). Plaintiff asserts that he is entitled to damages pursuant to section 362(k) for the alleged violation of the section 362(a) automatic stay. With respect to the alleged violation of the section 1301(a) co-debtor stay, he asks the Court to hold Defendants in contempt of court and award damages under section 105(a). Plaintiff asks the Court to set a subsequent hearing to determine his actual damages, which he asserts are in the form of legal fees and expenses.

Second, Defendants filed *Defendants David Soble, Soble PLC, and Yassmen Sobh's Motion for Summary Judgment on Count II of the First Amended Adversary Complaint* [Doc. No. 91] (the "Defendants' Motion"). In Defendants' Motion, Defendants assume, without admitting, that the conduct alleged in Count II violated the co-debtor stay imposed by section 1301(a). Nevertheless, Defendants seek

[1] The other named defendants in this adversary proceeding, Pretty Michigan Homes, LLC, Dylan Tanaka, Plum Tree Estates, LLC and Rana Group, LLC were dismissed pursuant to prior opinions of the Court, as discussed below.

[2] The Bankruptcy Code is set forth in 11 U.S.C. § 101 *et seq.* Specific sections of the Bankruptcy Code are identified herein as "section __." Similarly, specific rules of the Federal Rules of Bankruptcy Procedure are identified herein as "Bankruptcy Rule __" and specific rules of the Federal Rules of Civil Procedure are identified herein as "Civil Rule __."

summary judgment because, among other arguments, Plaintiff's asserted damages were not proximately caused by the assumed co-debtor stay violation.

The relief requested in both motions is sought pursuant to Civil Rule 56, which is made applicable in this adversary proceeding pursuant to Bankruptcy Rule 7056. Discovery has closed in this adversary proceeding and the material facts, as set forth herein, are undisputed.[3]

For the reasons detailed in this Opinion, the Court denies Plaintiff's Motion in part and grants it in part. The Court concludes that no violation of the automatic stay in section 362(a) has been established. However, a violation of the section 1301(a) co-debtor stay did occur. Finally, the Court grants Defendants' Motion, concluding that the sole damages identified by Plaintiff—legal fees and expenses incurred in litigation with various parties—were not proximately caused by the violation of the section 1301(a) co-debtor stay, and thus, Plaintiff has suffered no injury as a result of that violation. Based on the foregoing, Count II, the sole remaining count in the Amended Complaint, fails as a matter of law and is dismissed.

## II. Relevant Factual Background

[3] Such facts are taken for the Amended Complaint, the Statement of Undisputed Material Facts in the *Defendants' Brief In Support of Their Motion for Summary Judgment on Count II* [Doc. No. 91 at p. 13-16] and *Plaintiff's Response to the Soble Defendants' Statement of Undisputed Material Facts and Statement of Additional Material Facts* [Doc. No. 109-1]. At the October 26, 2026 hearing on the motions, counsel for the parties agreed that there are no material disputed facts other than an itemization of the fees and expenses incurred by Plaintiff, which were not produced by Plaintiff. [Doc. No. 110 at 1:23:05].

This adversary proceeding relates to years-long litigation associated with a parcel of real property where Plaintiff resides located at 7985 Huron St., Taylor, Michigan (the "Property"). Plaintiff's parents, Gary Brohl, Sr. and Suzanne Brohl, initially owned the Property subject to a mortgage held by Bank of America, N.A. The bank initiated foreclosure proceedings in 2017. The foreclosure litigation was eventually resolved through execution of a settlement agreement on October 22, 2019. Pursuant to such settlement, the Property was conveyed to an entity called Pretty Michigan Homes, LLC ("PMH") via a quitclaim deed dated October 22, 2019.

Contemporaneous with this transaction, PMH entered into a land contract with Plaintiff and his parents (the "Land Contract"), a copy of which is attached as Exhibit C to Plaintiff's Motion. The Land Contract contemplated interest only payments to purchase the Property for a period of thirty-six months with a balloon payment to be made on or before September 30, 2022. Upon receipt of the balloon payment, the seller was required to convey its interest in the Property to the buyers by quit claim deed.

On December 18, 2023, Plum Tree Estates, LLC ("PTE"), the successor in interest to PMH, commenced a forfeiture action in state court [23rd District Court, Case No. 23-02-4632-SP] (the "Forfeiture Action") due to Plaintiff's failure to make payments under the Land Contract. A hearing in the Forfeiture Action was scheduled for January 10, 2024.

Less than an hour before the start of that hearing, Plaintiff filed his first chapter 13 bankruptcy case [Case No. 24-40226] (the "First Bankruptcy Case").[4] Minutes later, Plaintiff's counsel, Mr. Stuart Sandweiss, provided notice of the bankruptcy filing by e-mail to Soble, whose firm, Soble, PLC, served as counsel for PTE in the Forfeiture Action. *See* Amended Complaint, Exhibit 15. Soble responded by stating:

> Susan Brohl was the owner of the home. Gary Brohl does not own the home. The balance of the land contract is due as a balloon. Gary Brohl is nothing but an occupant. We will proceed, but notify the court of Gary's bankruptcy.

*Id.* Mr. Sandweiss responded:

> You listed Gary as a co-Defendant. This means that there is an automatic stay in effect under 11 USC 1301 – even if he is not on the land contract – although the land contract attached to the Complaint lists him as a party. Should you choose to violate the automatic stay, I will seek sanctions against you personally….

*Id.* Soble responded: "That's fine Stuart. My colleague will still appear at today's hearing." *Id.*

The transcript from the January 10, 2024 hearing is attached as Exhibit A to Plaintiff's Motion. Sobh, then an employee of Soble, PLC, appeared at the hearing on behalf of PTE. Neither Plaintiff nor his counsel appeared at the hearing. At the

[4] The First Bankruptcy Case was dismissed on June 21, 2024.

hearing, Sobh notified the state court that Plaintiff had filed the First Bankruptcy Case:

> MS. SOBH: So, he filed – Gary filed a Chapter 13 Bankruptcy; however, he is not on the Land Contract. We did leave him as a party as an occupant of the home, but it is Suzanne Brohl who is on the Land Contract –
>
> THE COURT: Okay.
>
> MS. SOBH: But we did want to put that on the record and keep that in your hands.
>
> * * *
>
> MS. SOBH: Okay. Your Honor, just for clarification, we may proceed with the case, despite the Chapter 13 Bankruptcy that was filed by the occupant?
>
> THE COURT: Well, yeah, it's not --- Well, it's --- it's not a – Unless they become – you become one of the named creditors, I mean, it's just a place where he's living at and has an agreement to make payments to. So, until I see an order, a stay order, from a bankruptcy court, he's still a named defendant in this case.
>
> MS. SOBH: Okay. Thank you, your honor.

*See* Plaintiff's Motion, Exhibit A at pp. 3-5. The state court then adjourned the hearing for two weeks. *Id.* at p. 5.

A copy of the transcript from the continued hearing held on January 24, 2024 is attached as Exhibit B to Plaintiff's Motion. Once again, Sobh appeared on behalf of PTE; again neither Plaintiff nor his counsel appeared at the hearing. The following is the transcript from that hearing:

THE COURT: This is case 23-02-4632, Plumtree Estates versus Brohl, Brohl, and Brohl. It appears as there's a Notice of Bankruptcy Filing.

MS. SOBH: Yes, your Honor, they informed us before the last hearing that a bankruptcy was being filed, and Gary Brohl is not part of the Land Contract, he is however a tenant on the property, and so that is why he's listed.

THE COURT: Sure.

MS. SOBH: It is only Suzanne Brohl who is (inaudible).

THE COURT: So, Suzanne Brohl is part of the Land Contract?

MS. SOBH: She is the only one who's part of the Land Contract, yes, your Honor.

THE COURT: So, I don't see --

MS. SOBH: So, she is deceased now, and that is why we have to (inaudible) parties. I do not know if the Stay is open. It doesn't appear that the Stay is open, --

THE COURT: Sure.

MS. SOBH: -- as far as we can tell.

THE COURT: Well, I guess, here's the thing. To the extent that Mr. Brohl owes any money -- I'm not sure when she passed away. I mean, obviously if she's -- if he's living there, he may or may not owe rents. I mean, you just can't live somewhere for free, but they didn't appear here today either. So, with regard to Suzanne Brohl, nobody has appeared for her, nobody has appeared for her estate. How would you like to proceed? Default?

MS. SOBH: Yes, your Honor, we would like to proceed with the default.

THE COURT: And then, Gary Brohl, Jr., he has failed to appear as well. So, I am going to issue a stay as to Gary Brohl because the bankruptcy court requires me to.

MS. SOBH: Okay, your Honor.

THE COURT: Defendant number two failed to appear, defendant number three failed to appear. So, as to defendant one, Gary Brohl, the case --

MS. SOBH: Gary Brohl, Jr., just --

THE COURT: Well, I know the case is -- has a stay on it.

MS. SOBH: Okay.

THE COURT: As to defendants two and defendant three, you're requesting a default. They have to vacate the premises by February the 5th. How much are the -- How much of the Land Contract was paid?

MS. SOBH: The Land Contract, it is going to be less than (inaudible) percent. Let me --

THE COURT: So, less -- So, we're talking 90 days?

MS. SOBH: Yes, your Honor.

THE COURT: All right. So, from today's date that's going to be one, two, three, four, five, six, seven, eight, nine, ten, so that's 70. Eleven, twelve, thirteen. So, the 24th of April, so 4/24/24., and that is a numeric palindrome as well. All right. And go ahead and submit that via the portal, or via the email.

MS. SOBH: Thank you, your Honor. So, we will seek essentially possession only against Gary Brohl, Sr., and Suzanne Brohl, correct?

THE COURT: Possession on the default as to Junior and her. There's a stay as to him because he's got a bankruptcy case going.

MS. SOBH: Okay. Thank you, your Honor.

*See* Plaintiff's Motion, Exhibit A.

Thereafter, the state court entered a *Judgment of Possession After Land Contract Forfeiture* (the "Default Judgment") on January 31, 2024 in favor of PTE and against Plaintiff's parents, Suzanne Brohl[5] and Gary Brohl, Sr. only.[6] *See* Amended Complaint, Exhibit 19. The Default Judgment provides for the forfeiture of the land contract vendee interest of Suzanne Brohl and Gary Brohl, Sr. and provides that an order of eviction may be issued as to them upon the expiration of ninety days. Consistent with the discussion on the record at the January 24, 2024 hearing, Plaintiff is excluded from the Default Judgment—it does not mention him at all. The Default Judgment does not purport to effect a forfeiture of Plaintiff's land contract vendee interest nor does it seek to terminate his right of possession.

On March 29, 2024, PTE executed a quitclaim deed conveying its interest in the Property to Rana Group, LLC ("Rana"). *Id.* at Exhibit 20. Months later, on July 25, 2024, and despite the fact that Plaintiff's land contract vendee interest had not been terminated by the state court, Plaintiff signed a *Residential Lease Agreement*

[5] Suzanne Brohl passed away at some time prior to the entry of the Default Judgment.

[6] Plaintiff alleges that the state court register of actions improperly identified the parties to the Default Judgment by listing Plaintiff. Any erroneous identification of the parties by the state court in its own records is irrelevant for purposes of Plaintiff's Motion. The Default Judgment itself only names Suzanne Brohl and Gary Brohl, Sr.

(the "Lease") with Rana whereby he leased the Property for a period of one year, effective August 1, 2024, in exchange for monthly rental payments.

In December 2024, Rana commenced an eviction action against Plaintiff due to his failure to make the rental payments contemplated under the Lease [23rd District Court, Case No. 24-02-5837-LT] (the "Eviction Action"). The Eviction Action was stayed by the commencement of this second bankruptcy case on July 31, 2025. Rana filed a *Motion For Relief From Automatic Stay* [Main Case Doc. No. 18] (the "Stay Relief Motion") in this Court seeking relief from the automatic stay so that it could continue the Eviction Action in state court. The Court granted the Stay Relief Motion pursuant to an order [Main Case Doc. No. 42] entered on September 11, 2025.

Plaintiff's most recent *Chapter 13 Plan* [Main Case Doc. No. 122] (the "Plan") was filed on September 21, 2026. That Plan identifies the Property as Plaintiff's "Personal Residence" and identifies the Land Contract as an executory contract to be assumed under the Plan. *See* Plan at pp. 5, 7. The arrearage amount identified in the Plan is $45,561.67, which Plaintiff proposes to pay over a period of thirty-eight months. A hearing on confirmation of the Plan is scheduled for November 5, 2026.

On September 5, 2025, Plaintiff commenced this adversary proceeding. All defendants filed motions seeking dismissal of the complaint. [Doc. Nos. 10, 12, and

31]. At the conclusion of a January 26, 2026 hearing on such motions, the Court gave a bench opinion wherein it granted the dispositive motion of Soble and PTE and denied the dispositive motions filed by the other defendants, without prejudice, on procedural grounds.[7] The Court granted Plaintiff leave to amend his complaint to correct such deficiencies. The Court cautioned that this would be Plaintiff's last chance and that it would not be inclined to grant further amendments.

On February 9, 2026, Plaintiff filed the Amended Complaint which added new counts and new defendants. The Amended Complaint contained four counts, specifically: Count I: Declaratory Judgment; Count II: Damages for Violating the Automatic Stay; Count III: Fraud/Fraud in the Inducement; and Count IV: Civil Conspiracy.

More motions to dismiss followed. After fulsome briefing and oral argument, the Court issued two written opinions: (i) the March 23, 2026 *Opinion Granting Pretty Michigan Homes, LLC's and Dylan Tanaka's Motion to Dismiss* [Doc. No. 54], and (ii) the May 12, 2026 *Opinion Regarding Defendant Rana Group, LLC's Motion to Dismiss* [Doc. No. 68]. Collectively, these opinions dismissed all claims against all defendants in this adversary proceeding other than Count II as to Defendants.

[7] In its bench opinion, the Court explained that, although these latter dispositive motions were denied on procedural grounds, there were serious deficiencies with respect to the sufficiency of the allegations in the complaint as to all Plaintiff's claims.

After the conclusion of discovery in this adversary proceeding, on July 27, 2026, Plaintiff filed Plaintiff's Motion. After an unsuccessful mediation, Defendants filed a response [Doc. No. 103] to Plaintiff's Motion on October 15, 2026. Defendants filed Defendants' Motion on July 27, 2026, and Plaintiff filed his response [Doc. No. 109] to that motion on October 19, 2026. The Court held a hearing on both motions on October 26, 2026, and thereafter took the matters under advisement.

## III. Standard of Review

Civil Rule 56 is incorporated in bankruptcy cases pursuant to Bankruptcy Rule 7056. That rule provides that a motion for summary judgment "shall" be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (italicization omitted). A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." *Kalamazoo River Study Grp. v.*

*Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." *Kalamazoo River Study Grp.*, 171 F.3d at 1068. In meeting their respective burdens,

> [T]he moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the jury. Essentially, a motion for summary judgment is a means by which to "challenge the opposing party to 'put up or shut up' on a critical issue."

*Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). Finally, the Sixth Circuit has concluded that:

> in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court…, trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted.

*Id.* at 150 (internal citations omitted).

In deciding a motion brought under Civil Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). However, the nonmoving party may not rely on mere allegations or denials but must "cit[e] to particular parts of materials in the

record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (internal quotation marks and citation omitted).

## IV. Discussion

### a. Plaintiff has failed to establish a violation of the section 362(a) automatic stay

Immediately upon the filing of a bankruptcy case, a stay of certain actions against the debtor and his or her bankruptcy estate goes into effect. *See* 11 U.S.C. § 362(a). Actions precluded by the automatic stay are listed in the subsections of section 362(a). In the Amended Complaint, Plaintiff directs the Court to two of those subsections, subsection (a)(1) and subsection (a)(3), which he claims were violated. *See* Amended Complaint at ¶ 106. Subsection (a)(1) stays "the commencement or continuation … of a judicial … proceeding against the debtor…." 11 U.S.C. § 362(a)(1). Subsection (a)(3) stays "any act to obtain possession of property of the estate or of property from the estate…." 11 U.S.C. § 362(a)(3).

Pursuant to section 362(k)(1), if an individual debtor is injured by a willful violation of the automatic stay, such debtor may recover damages. Specifically, that subsection provides: "Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages,

including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

"A party acts willfully by taking any action prohibited by § 362(a) after the party receives notice of the bankruptcy filing." *In re Banks*, 253 B.R. 25, 29 (Bankr. E.D. Mich. 2000) (citing *In re Briggs*, 143 B.R. 438, 462 (Bankr. E.D. Mich. 1992)); *see also TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687-88 (B.A.P. 6th Cir. 1999). Chief Judge Opperman succinctly summarized the law regarding stay violation damages under section 362(k)(1) in a recent opinion:

> A party violates the automatic stay by taking any action prohibited by Section 362(a) after receiving notice of a bankruptcy filing. "Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay." To show liability under Section 362(k), the Debtor need only show actual notice of the bankruptcy and an act in violation of the stay. "Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages."

*In re Gillespie*, 2026 WL 544805, at *3 (Bankr. E.D. Mich. Feb. 26, 2026) (internal citations omitted).

It is undisputed that Plaintiff filed the First Bankruptcy Case on January 10, 2024, less than an hour before the first scheduled hearing in the Forfeiture Action. It is also undisputed that notice of the bankruptcy filing was provided to Soble within minutes of the bankruptcy filing. The section 362(a) automatic stay and the section 1301(a) co-debtor stay went into effect upon the filing of the First Bankruptcy Case and remained in place until June 21, 2024, when that bankruptcy case was dismissed.

Plaintiff alleges in the Amended Complaint that one or more of the Defendants willfully took the following actions in violation of the section 362(a) automatic stay:

1. "Defendant Soble sent an attorney in his office (Sobh) to appear and to proceed on the [Forfeiture Action] – upon information and belief against [Plaintiff's] co-Debtors" and failed to seek administrative closure of the case, *Id.* at ¶ 99;

2. "Instead of ensuring that the [Forfeiture Action] got closed due to the bankruptcy stay, Sobh / SPLC had the State Court adjourn the [Forfeiture Action] for two weeks (to January 24, 2024)," *Id.* at ¶ 100;

3. "On January 24, 2024 Sobh / SPLC appeared for a second hearing on the [Forfeiture Action]" and "requested a default / default judgment," *Id.* at ¶¶ 62, 101; and

4. "Following the January 24, 2024 hearing (on or about January 30, 2024) Defendant Sobh, agent for SPLC, again violated the automatic stay by submitting a proposed 'Judgment of Possession After Land Contract Forfeiture'" against Plaintiff's parents (but not against Plaintiff). *Id.* at ¶¶ 63, 102.[8]

The Court will now address both of the subsections of section 362(a) that Plaintiff alleges were violated by these actions.

**i. Section 362(a)(1)**

In considering whether one or more of Defendants "continu[ed] … a judicial … proceeding against the debtor" in violation of section 362(a)(1), the Court first observes that the mere attendance at the post-petition hearings in the state court and

[8] At the hearing on Plaintiff's Motion, Plaintiff's counsel confirmed that it was these acts alone that, he alleges, violated the section 362(a) automatic stay and/or the section 1301(a) co-debtor stay. [Doc. No. 110 at 0:33:36 – 0:34:15].

the failure to request administrative closure of the Forfeiture Action at such hearings is not sufficient to establish a violation of the automatic stay. *See, e.g.*, *In re Jackson*, 637 B.R. 487, 488 (Bankr. E.D. Mich. 2022) ("merely adjourning a state court matter, or failing or refusing to cause a pending state court lawsuit to be closed or dismissed, without more, is not a violation of the automatic stay") (citing *Worthy v. World Wide Fin. Servs.*, *Inc.*, 347 F. Supp. 2d 502, 508-09 (E.D. Mich. 2004), *aff'd*, 192 F. App'x 369 (6th Cir. 2006) (holding that postponement of a sheriff's sale in accordance with state law does not violate section 362)); *see also Taylor v. Slick*, 178 F.3d 698, 701-02 (3d Cir. 1999); *First Nat'l Bank of Anchorage and Alaska Title Guar. Co. v. Roach (In re Roach)*, 660 F.2d 1316, 1318-19 (9th Cir. 1981); *Perez v. Deutsche Bank Nat'l Trust Co. (In re Perez)*, 556 B.R. 527, 536-37 (B.A.P. 1st Cir. 2016).

Plaintiff alleges that Defendants did more than just appear at such hearings though. He alleges that they requested and obtained affirmative relief against him and made misrepresentations regarding his interest in the Property. Specifically, Plaintiff argues that Sobh violated section 362(a)(1) when, in response to a question from the state court regarding how she wanted to proceed, she stated: "Yes, your honor, we would like to proceed with a default." *See* Plaintiff's Motion, Exhibit A. Plaintiff also asserts that Defendants violated section 362(a)(1) when they uploaded the proposed Default Judgment with the state court. *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the Court holds that Defendants' alleged actions did not violate the section 362(a)(1) automatic stay. Sobh did not continue the litigation as to Plaintiff but, rather, properly advised the state court of Plaintiff's bankruptcy filing at the outset of such hearings. And, contrary to the allegations of Plaintiff, Sobh and the state court agreed that all actions against Plaintiff were necessarily stayed:

> THE COURT: Well, I guess, here's the thing. To the extent that Mr. Brohl owes any money -- I'm not sure when she passed away. I mean, obviously if she's -- if he's living there, he may or may not owe rents. I mean, you just can't live somewhere for free, but they didn't appear here today either. So, with regard to Suzanne Brohl, nobody has appeared for her, nobody has appeared for her estate. How would you like to proceed? Default?
>
> MS. SOBH: Yes, your Honor, we would like to proceed with the default.
>
> THE COURT: And then, Gary Brohl, Jr., he has failed to appear as well. *So, I am going to issue a stay as to Gary Brohl because the bankruptcy court requires me to.*
>
> MS. SOBH: *Okay, your Honor.*
>
> * * *
>
> MS. SOBH: Thank you, your Honor. *So, we will seek essentially possession only against Gary Brohl, Sr., and Suzanne Brohl, correct?*
>
> THE COURT: Possession on the default as to Junior (sic)[9] and her. *There's a stay as to him because he's got a bankruptcy case going.*

[9] It appears that the state court judge was somewhat confused regarding whether Plaintiff or his father Gary Brohl, Sr. had filed the bankruptcy case. Nothing in the transcripts suggests that Sobh

MS. SOBH: Okay. Thank you, your Honor.

*See* Plaintiff's Motion, Exhibit B at p. 4-5 (emphasis added). Notably, the transcript evidences an agreement between Sobh and the state court that PTE would not seek possession of the Property from Plaintiff "because he's got a bankruptcy case going." *Id.*

Plaintiff also alleges that Sobh violated the automatic stay by making material misrepresentations at these hearings asserting that Plaintiff was merely an "occupant" of the Property and that he was not a party to the Land Contract. *See* Plaintiff's Motion at p. 5. But Sobh's characterization at the hearings of Plaintiff's interest in the Property, while erroneous, did not actually impact Plaintiff or his land contract vendee interest in any way due to the imposition of a stay that all parties agreed precluded further action against Plaintiff.[10] Given the foregoing, it is unclear how such statements, right or wrong, could constitute a violation of the section 362(a)(1) automatic stay.

One week after the January 24, 2024 hearing, the state court entered the Default Judgment in favor of PTE and against Plaintiff's parents only. Consistent

---

caused this confusion. She quite clearly states that an automatic stay applied to Plaintiff and that she was seeking "essentially possession against Gary Brohl, Sr., and Suzanne Brohl" only.

[10] Regarding such misstatements, the Court notes that there has been significant confusion, throughout this case, about Plaintiff's interest in the Property. The Court believes that this is largely attributable to the execution of the Lease by Plaintiff and the fact that no party was able to present a signed copy of the Land Contract until December 2025.

with the discussion on the record at the state court hearing, Plaintiff is not included on the Default Judgment. Indeed, it is undisputed that no judgment was ever obtained against Plaintiff. Plaintiff affirmatively alleged in the Amended Complaint:

> *… the State Court never actually issued a judgment against Debtor/Plaintiff Gary Brohl, Jr. that would have forfeited the Land Contract* (and, under MCL § 600.5744 would have provided the Buyers with 90 days or 6 months to redeem the Land Contract-depending on whether the Buyers paid over 50% of the Land Contract prior to forfeiture).

*See* Amended Complaint at ¶ 65 (emphasis added).[11]

Based on the foregoing, the Court holds that the Defendants did not continue a judicial proceeding against Plaintiff in violation of section 362(a)(1).

**ii. Section 362(a)(3)**

Plaintiff also directs the Court to section 362(a)(3). To determine whether one or more of Defendants undertook an "act to obtain possession of property of the estate or of property from the estate" in violation of section 362(a)(3), the Court must first identify what constitutes property of the bankruptcy estate. Immediately upon the filing of a bankruptcy petition, a bankruptcy estate is formed which comprises "all legal or equitable interests of the debtor." 11 U.S.C. § 541(a)(1). The

[11] This is just one of many allegations in the Amended Complaint wherein Plaintiff asserted that the Default Judgment did not impact Plaintiff's land contract vendee interest in the Property and, thus, his interest remained valid. *See* Amended Complaint at ¶¶ 3, 5, 65, 79, 84-94, 119, 124, 126, 130 and 137.

bankruptcy estate includes whatever property rights a debtor had at the petition—no more, no less. *See Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984).

Included in a debtor's bankruptcy estate are the debtor's interests in land contracts. *See Moyer v. Edlund (In re Vandenbosch)*, 405 B.R. 253, 263 (Bankr. W.D. Mich. 2009). State law governs the property interests of parties to a land contract. In Michigan, a land contract is an agreement for the sale of an interest in real estate in which the purchase price is to be paid in installments and no promissory note or mortgage is involved between the seller and the buyer. *See* 1 MICHIGAN REAL PROPERTY LAW PRINCIPLES AND COMMENTARY (3d ed. 2005), § 16.1. Under such agreements, the seller is usually referred to as the vendor and the purchaser is generally called the vendee. *Id.*

The Sixth Circuit has held that, under Michigan law, land contracts are executory contracts subject to the assumption and rejection procedures set forth in section 365. *See Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469, 471 (6th Cir. 1989). Michigan courts have long held that a land contract vests equitable title with the vendee/purchaser, while the vendor/seller retains legal title to the property as security for the payment of the purchase price. *See, e.g.*, *United States v. Harold*, 423 F. Supp. 3d 410, 415 (E.D. Mich. 2019); *Hooper v. Van Husan*, 63 N.W. 522, 523 (Mich. 1895) (discussing the doctrine of equitable conversion).

With a traditional mortgage transaction, the real property itself becomes property of the mortgagor's bankruptcy estate subject to the mortgagee's security interest. Conversely, with a land contract, only the vendee's equitable interest in the property (which, pursuant to the terms of most land contracts includes a right to possession) becomes property of the bankruptcy estate. *See Vandenbosch*, 405 B.R. at 263. Legal title to the property remains with the vendor/seller until the vendee/purchaser pays the full purchase price under the land contract. *See Zurcher v. Herveat*, 605 N.W.2d 329, 341 (Mich. Ct. App. 2000); *see also* 1 MICHIGAN REAL PROPERTY LAW PRINCIPLES AND COMMENTARY, at § 16.3 ("When the vendee pays the purchase price, he or she is entitled to a conveyance of legal title.").

The Land Contract provided for interest only payments for thirty-six months with a balloon payment to be paid at the expiration of that period, on September 30, 2022. Per the terms of the Land Contract, upon receipt of the balloon payment, the seller was required to convey its interest in the Property to the buyers by quit-claim deed. It is undisputed that the balloon payment was never paid. Therefore, upon the commencement of the First Bankruptcy Case, Plaintiff's sole interest in the Property was the equitable interest, including a right to possession, and that interest became property of his bankruptcy estate pursuant to section 541(a)(1).

In contrast to his parents, whose equitable interests under the Land Contract were impacted by the Default Judgment, Plaintiff's equitable interest was not so

impacted and remains valid to this day.[12] No act to take possession of, or exercise control over, such property of the estate was taken precisely because Sobh and the state court agreed that such interest was protected by the automatic stay.

Evidence can be found throughout the record in this bankruptcy case that no act was undertaken to take possession of, or exercise control over, Plaintiff's equitable land contract interest in the Property. It is undisputed that no judgment was ever entered against Plaintiff. Plaintiff has repeatedly asserted that his equitable interest in the Property has not been forfeited. *See* Amended Complaint at ¶¶ 3, 5, 65, 79, 84-94, 119, 124, 126, 130 and 137. Plaintiff continues to reside at the Property (despite his repeated failure over several years to make payments due under the Land Contract, the Lease, or otherwise) and he lists the Property as his "Personal Residence" in his Plan. That Plan identifies the Land Contract as an ongoing executory contract that Plaintiff desires to assume pursuant to section 365(a); he proposes to cure the arrearage on such executory contract over a period of thirty-eight months. *See* Plan at pp. 5, 7. Plaintiff cannot have it both ways. He cannot

---

[12] Under Michigan law, if a land contract does not explicitly specify otherwise, co-vendees are presumed to hold their equitable interest as tenants in common. *See Douglass v. First Merit Bank*, 2015 WL 5813365, at *2 (Bankr. E.D. Mich. Sept. 28, 2015) (applying M.C.L. § 554.44 which states: "All grants and devises of lands, made to 2 or more persons, except as provided in the following section, shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy."); *see also Cristia v. Cristia*, 26 N.W.2d 869, 872 (Mich. 1947) (explaining that two parties to a land contract did not specify otherwise so the parties will be "tenants in common of the vendees' interest under the land contract."). As tenants in common, each vendee interest is separate in the undivided property. *See United States v. Craft*, 535 U.S. 274, 280 (2002).

assert that his equitable interest in the Property was not impacted in any way by the Default Judgment and, thus, remains valid while, at the same time, claiming that he was damaged to the tune of tens of thousands of dollars by the entry of the Default Judgment.

Based on the foregoing, the Court holds that Defendants did not take "any act to obtain possession of property of the estate" or "to exercise control over property of the estate" in violation of the section 362(a)(3) automatic stay.

Because no violation of the automatic stay occurred, Plaintiff's claim for actual and punitive damages under section 362(k) must be denied.

**b. Plaintiff has established that Defendants violated the section 1301(a) co-debtor stay**

Separate and distinct from any violation of the section 362(a) automatic stay, Plaintiff alleges that one or more Defendants violated the section 1301(a) co-debtor stay. In a chapter 13 case such as the First Bankruptcy Case, section 1301(a) imposes a stay of acts against co-obligors of obligations of a debtor, providing:

> [A]fter the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor … unless—
>
> (1) such individual became liable on … such debt in the ordinary course of such individual's business; or
> (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

11 U.S.C. § 1301(a). The co-debtor stay is a statutory injunction in favor of non-debtors—in chapter 13 cases only—who are jointly liable on a debt with the debtor and, like the automatic stay of section 362(a), is enforceable by the court. The section 1301(a) co-debtor stay protects a chapter 13 debtor by "insulating that [debtor] from indirect pressures exerted by creditors on friends, relatives and fellow employees…." *In re Sommersdorf*, 139 B.R. 700, 702 (Bankr. S.D. Ohio 1991).

Unlike the automatic stay in section 362(a), there is no provision in section 1301(a) requiring the recovery of damages for violation of the co-debtor stay. *See Morris v. Zabu Holding Co. (In re Morris)*, 385 B.R. 823, 831 n. 11 (E.D. Va. 2008). Most courts agree that the damages provision in section 362(k) does not extend to violations of the section 1301(a) co-debtor stay. *See In re Hughes*, 2005 WL 1293982, at *1 (Bankr. M.D.N.C. May 2, 2005); *In re Stacker*, 2011 WL 182846, at *2 (Bankr. S.D. Ill. Jan. 20, 2011). Rather, violations of the section 1301(a) co-debtor stay are generally redressed through the powers granted to courts under section 105(a).[13] *See In re Juliao*, 2011 WL 6812542, at *7 (Bankr. E.D. Mich. Nov.

[13] Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

29, 2011); *In re Tucker*, 2017 WL 2773523, at *3 (Bankr. N.D. Iowa June 26, 2017) ("§ 105 is appropriate to carry out and give meaning to § 1301."); *In re Rick*, 2014 WL 7011029, at *3 (Bankr. E.D. Wis. Dec. 11, 2014) ("Section 1301 does not provide an affirmative remedy for violations of the co-debtor stay. Instead, a bankruptcy court may redress violations of the co-debtor stay through the power granted under § 105(a) of the Bankruptcy Code.").

Within a bankruptcy court's section 105(a) powers is the authority to find a party in civil contempt for violations of the Bankruptcy Code, including a violation of the co-debtor stay. *See In re Juliao*, 2011 WL 6812542, at *7.

> To hold a party liable for civil contempt, the complainant must establish three elements by clear and convincing evidence: (1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) the alleged contemnor did in fact violate the order; and (3) the order violated must have been specific and definite.

*Hunter v. Magack (In re Magack)*, 247 B.R. 406, 410 (Bankr. N.D. Ohio 1999) (citing *Glover v. Johnson,* 138 F.3d 229, 244 (6th Cir. 1998)). The Sixth Circuit has emphasized that willfulness is not considered for civil contempt and that intent to disobey the order is irrelevant. *See Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996).

Based on the foregoing, in order for a finding of civil contempt to be issued, Plaintiff must show through clear and convincing evidence that Defendants had knowledge of the bankruptcy filing and the imposition of the section 1301(a) co-

debtor stay, that they violated such co-debtor stay, and that the text of section 1301(a) is specific and definite in terms of what conduct it prohibits.

These elements are easily satisfied here. First, it cannot be disputed that Defendants had knowledge of the bankruptcy filing and the imposition of the co-debtor stay because Mr. Sandweiss e-mailed Soble minutes after the First Bankruptcy case was filed and specifically referenced section 1301(a). *See* Amended Complaint, Exhibit 15. Second, no credible argument can be made that the act of seeking and obtaining a Default Judgment against Gary Brohl, Sr., who was jointly liable on the debt owed to PTE under the Land Contract, was not an act to continue a civil action or collect such debt in violation of the section 1301(a) co-debtor stay.[14] Defendants have not asserted that the defenses identified in the text of section 1301(a) are applicable here; they are not. Third, section 1301(a) is specific and definite in terms of what conduct is prohibited.

Based on the foregoing, the Court holds that one or more of Defendants violated the section 1301(a) co-debtor stay. A civil contempt order pursuant to section 105(a) is appropriate. Plaintiff's entitlement to damages for such violation will be discussed below.

**c. Plaintiff's asserted damages were not proximately caused by the violation of the section 1301(a) co-debtor stay**

[14] By this point, Gary Brohl, Sr. was the only co-obligor as Suzanne Brohl had passed away.

Notwithstanding the violation of the section 1301(a) co-debtor stay, the Court holds that Defendants are entitled to summary judgment on Count II. This is because the sole damages identified by Plaintiff—legal fees and expenses incurred in subsequent litigation with various parties—were not proximately caused by the acts which Plaintiff alleges violated the section 362(a) automatic stay and the section 1301(a) co-debtor stay.

Defendants assert that Plaintiff's Count II fails as a matter of law because the undisputed facts establish that he suffered no injury and that no actual damages were proximately caused by any stay violation. They state:

> Every fact bearing on injury is undisputed, and each one negates it. The [Default Judgment] was entered against Plaintiff's parents only (a decedent and a party who was never served), and Plaintiff concedes that no judgment was ever entered against him. To the extent Plaintiff points to the notation on the state court's register of actions of a "Default" as to him, that notation was never reduced to judgment, was never enforced, and had no legal effect on Plaintiff's rights. As Plaintiff himself pleads, no judgment forfeiting the Land Contract was ever issued against him, and regardless, entry of a judgment of possession would only have commenced a statutory redemption period under MCL § 600.5744; it would not have divested his interest.
>
> No writ of restitution was issued. No eviction occurred in 2024 or after. No party ever took any step to enforce the judgment while the stays were in place or afterward. By March 29, 2024, Plaintiff's counsel was advised in writing that the land contract proceedings relating to Plaintiff had been "set aside." The parties now agree that Plaintiff's land contract interest, although expired by its own terms, was never forfeited. And Plaintiff has resided at the Property continuously for the more than two years since the assumed violation without making payments under the Land Contract, the Lease, or otherwise. In short, the assumed violation left Plaintiff exactly where he stood before it: in

> possession of the Property, holding an unforfeited (if expired) land contract interest, and paying nothing. A stay violation which changes nothing injures no one.

Defendants' Motion, p. 8-9 (internal citations omitted). The Court agrees that the material facts set forth above are undisputed.

To survive summary judgment, Plaintiff must "come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict" for him that he suffered damages as a result of the alleged stay violations. To borrow the Sixth Circuit's colorful phrasing, a motion for summary judgment is a means by which to "challenge the opposing party to 'put up or shut up' on a critical issue." *Cox*, 53 F.3d at 149.

In support of his damages claim, Plaintiff filed an *Affidavit of Stuart Sandweiss In Support of Plaintiff's Response to the Soble Defendants' Motion for Summary Judgment* [Doc. No. 109-17] (the "Affidavit"). The Affidavit avers that Plaintiff's damages consist entirely of over $70,000 in legal fees and expenses[15] related to three separate buckets of litigation that Plaintiff engaged in subsequent to the entry of the Default Judgment, specifically: (i) the Eviction Action, (ii) litigating the Stay Relief Motion, and (iii) this adversary proceeding. *See* Affidavit at ¶ 13.

Section 1301 contains no express damages remedy. Compensatory relief for a violation of the co-debtor stay is therefore analyzed through a court's civil contempt

---

[15] Plaintiff failed to provide any itemized time records detailing his asserted fees and expenses.

authority under section 105(a). *See Patti v. Fred Ehrlich, P.C.*, 304 B.R. 182, 187 (E.D. Pa. 2003). The limitations on compensatory civil contempt sanctions are clear and apply here. The Sixth Circuit has held that such sanctions compensate for damages caused by the contemptuous actions and must be supported by evidence of the complainant's actual loss. *See United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991). The causal requirement for civil contempt is reinforced in *United States v. Work Wear Corp.*, 602 F.2d 110, 115 (6th Cir. 1979), where the court held that civil contempt compensates for injuries caused by disobedience. In *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 385 (6th Cir. 2003), the Sixth Circuit again reiterated the causal connection required for civil contempt in holding that relevant losses are those "resulting from" the contemptuous behavior.

In this case, Plaintiff has failed to establish that his three buckets of legal fees and expenses resulted from the Default Judgment.[16] That such fees and expenses were incurred after entry of the Default Judgment does not, in and of itself, establish causation.

---

[16] For purposes of determining whether Plaintiff's asserted damages were proximately caused by a stay violation, the Court notes that no party could have been injured by any of the alleged misstatements by Sobh at the January 2024 hearings because no one attended such hearings other than Sobh and the transcripts from such hearings were not obtained until July 2026. Thus, no colorable argument can be made that any party relied on such statements. The Court's focus, therefore, is on the Default Judgment.

### i. Fees and Costs Incurred in the Eviction Action

Months after the entry of the Default Judgment and after the First Bankruptcy Case was dismissed (and the associated stays terminated), Plaintiff signed the Lease with Rana whereby he leased the Property for a period of one year, effective August 1, 2024, in exchange for monthly rental payments. In December 2024, after Plaintiff failed to make the payments due under the Lease, Rana commenced the Eviction Action against Plaintiff. Defendants were not parties to the Eviction Action.

The Court holds that the fees and expenses incurred by Plaintiff in the Eviction Action were not proximately caused by the entry of the Default Judgment. Plaintiff has put forth no evidence linking his asserted damages to the entry of the Default Judgment. His proposed causal chain depends on the premise that the Default Judgment somehow deprived Plaintiff of an interest in the Property that he had to defend in the subsequent litigation. But, as discussed above, Plaintiff's rights were not impacted by the Default Judgment in any way. Plaintiff himself has repeatedly alleged as much. *See* Amended Complaint at ¶¶ 3, 5, 65, 79, 84-94, 119, 124, 126, 130 and 137. To the Court's knowledge, no one has ever alleged otherwise in any fulsome way.

Rather, the Eviction Action related to a subsequent Lease that, according to all evidence in the record, Plaintiff voluntarily entered into with Rana on July 25, 2024. Plaintiff has suggested that he may have mistakenly believed that his interest

in the Land Contract was terminated by the Default Judgment. But, as discussed, it was not. And Plaintiff had capable counsel, Mr. Sandweiss, representing him in both the Forfeiture Action and the First Bankruptcy Case whom he could have consulted regarding the impact of the Default Judgment. Any mistaken understanding by Plaintiff regarding the impact of the Default Judgment on his land contract vendee interest surely cannot be charged to the Defendants.

The Eviction Action was commenced by Rana for purposes of terminating Plaintiff's *leasehold interest* in the Property *under the Lease*. Such litigation really had nothing to do with the Defendants or the Default Judgment. Plaintiff now alleges that the Eviction Action turned on whether his interest under the Land Contract survived entry of the Default Judgment. But the pleadings from the Eviction Action tell a different story.[17] Plaintiff defended the Eviction Action by arguing that Plaintiff was not the rightful owner of the Property, was not a real party in interest and lacked standing to maintain the Eviction Action and, thus, the Lease was invalid. *See Defendant's Motion for Summary Disposition and Sanctions, or in the Alternative, Posting of Bond and Brief in Support* [Doc. No. 27-6]. Rana did not contest the Land Contract on the basis that it was impacted by the Default Judgment. Rather, Rana contested the Land Contract in the Eviction Action on statue of frauds grounds

---

[17] Upon the request of the Court, Plaintiff and Rana filed a *Joint Submission of State Court Documents* [Doc. No. 27] on November 24, 2025 containing the relevant documents from the Eviction Action.

because Plaintiff could not produce a signed copy of that agreement. *See Plaintiff's Response to Defendant's Motion for Summary Disposition* [Doc. No. 27-7].

The Court holds that Plaintiff has failed to come forward with record evidence creating a genuine dispute of material fact as to whether the fees and expenses that he incurred in the Eviction Litigation were proximately caused by, and reasonably incurred as a result of, the entry of the Default Judgment. The undisputed facts remove the requisite link between the Default Judgment and such later litigation.

#### ii. Fees and Costs Incurred Opposing the Stay Relief Motion

The Stay Relief Motion was merely a request by Rana for permission to continue the Eviction Action in state court upon the filing by Plaintiff of this second bankruptcy case. As with the Eviction Action, the fees and expenses that Plaintiff incurred unsuccessfully opposing the Stay Relief Motion arose directly from Rana's attempt to enforce the Lease. None of the Defendants took any position with respect to the Stay Relief Motion.

Any alleged connection to the Default Judgment is even more tenuous here. Plaintiff cannot establish causation merely by placing the Default Judgment, the conveyance of the Property to Rana, the execution of the Lease, the commencement of the Eviction Action, the filing of the second bankruptcy case, and the filing of the Stay Relief Motion in chronological sequence. The Court holds that Plaintiff has failed to come forward with record evidence creating a genuine dispute of material

fact as to whether the fees and expenses that he incurred in responding to the Stay Relief Motion were proximately caused by, and reasonably incurred as a result of, the entry of the Default Judgment.

#### iii. Fees and Costs Incurred Prosecuting the Adversary Proceeding

Finally, Plaintiff asserts damages associated with the prosecution of this adversary proceeding. The Amended Complaint asserted four counts against seven different defendants. All claims against all defendants other than the claims addressed in this Motion (Count II) were either voluntarily withdrawn as moot or dismissed pursuant to Civil Rule 12(b)(6) pursuant to two written opinions issued by the Court. [Doc. Nos. 54 and 68].

The Court recognizes that reasonable fees incurred to stop, remedy, or obtain relief from a stay violation may entitle a party to a compensable loss even though no other damages are present. But the Amended Complaint did not seek to set aside the Default Judgment or enjoin any further action with respect to the Default Judgment; indeed, no evidence has been presented to suggest that any party ever took any action whatsoever with respect to the Default Judgment.

The only count in the Amended Complaint that materially relates to the Default Judgment is Count II, addressed herein, which seeks damages for violating the automatic stay. Because civil contempt compensates for injuries caused by the contemptuous violations, *Bayshore Assocs., Inc.*, 934 F.2d at 1400, at best, only the

portion of the fees in this adversary proceeding related to prosecuting Count II could constitute compensable damages.

While the Court has held that a violation of the section 1301(a) co-debtor stay occurred in this case, the Court has already determined that the alleged injuries identified by Plaintiff were not proximately caused by such violation. It is undisputed that the Default Judgment did not impact Plaintiff's interest under the Land Contract or his right to continue occupying the Property. Indeed, Plaintiff continues to reside at the Property to this day, and he seeks to assume the Land Contract as an executory contract in his Plan.

It is Plaintiff's burden to establish the required causal connection between the section 1301(a) co-debtor stay violation and damages. The Court has considered all three buckets of legal fees and expenses identified by Plaintiff as his injury and has concluded that none of the fees and expenses were proximately caused by, or resulted from, the Default Judgment.

In the final analysis, contempt sanctions are squarely within the discretion of the trial court. *See Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir. 1989) ("a finding of civil contempt is within the discretion of the district court, so that the standard of review in contempt cases is whether the court abused its discretion"); *United Wholesale Mortg., LLC v. Atl. Tr. Mortg. Corp.*, 2026 WL 1644071, at *7 (E.D. Mich. June 8, 2026) ("'A decision on a contempt petition is within the sound

discretion of the trial court,' and 'the power to punish for contempts' should not be used lightly....'"). This "discretion includes the power to frame a sanction to fit the violation." *Gary's Elec. Serv. Co.*, 340 F.3d at 385 (citations omitted).

Here, one or more of Defendants violated the section 1301(a) co-debtor stay by obtaining the Default Judgment. That was a mistake. But Plaintiff has not identified anything in the record to suggest that it was anything other than an honest mistake. Sobh promptly informed the state court of Plaintiff's bankruptcy filing and discussed the impact of the automatic stay at the January 2024 hearings. The Default Judgment was expressly tailored so as not to impact Plaintiff's interests under the Land Contract. Given the circumstances, including the lack of any demonstrable harm caused by the co-debtor stay violation, the Court does not believe that Sobh's mistake warrants the imposition of sanctions.[18]

## V. Conclusion

---

[18] In addition to actual damages, Plaintiff requests punitive damages for the alleged stay violations. Section 362(k) expressly contemplates that a court may award punitive damages for a willful violation of the section 362(a) automatic stay "in appropriate circumstances." But, the Court has held that no such violation occurred in this case. Regarding the section 1301(a) co-debtor stay violation, the Sixth Circuit has held that, in rare circumstances, a bankruptcy court may exercise its equitable powers to award mild non-compensatory punitive damages. *Adell v. John Richards Home Bldg. Co. (In re John Richards Home Bldg. Co.)*, 552 Fed. Appx. 401, 445 (6th Cir. 2013). For an award of such damages, the courts are directed to consider three factors: (i) the extent of the parties' misconduct, (ii) whether the punitive damage award will remedy the actual or potential harm the plaintiff suffered, and (iii) in comparable cases, the difference between a punitive damage award entered by a fact finder and an imposition of a civil penalty. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2003). For the reasons identified elsewhere in this Opinion, the Court concludes that an award of punitive damages is not warranted in this case. Such request is denied.

For the reasons detailed in this Opinion, the Court denies Plaintiff's Motion in part and grants it in part. The Court concludes that no violation of the automatic stay in section 362(a) has been established. However, a violation of the section 1301(a) co-debtor stay did occur.

The Court grants Defendants' Motion, concluding that the sole damages identified by the Plaintiff—legal fees and expenses incurred in subsequent litigation with various parties—were not proximately caused by the violation of the section 1301(a) co-debtor stay and, thus, Plaintiff has suffered no injury as a result of that violation. The Court declines to award compensatory or punitive damages.

Because Plaintiff has not been injured by the section 1301(a) co-debtor stay violation, Count II, the sole remaining count in the Amended Complaint, fails as a matter of law and is dismissed.

The Court will enter a separate order consistent with this Opinion.

**Signed on November 3, 2026**

**/s/ Paul R. Hage**

**Paul R. Hage**
**United States Bankruptcy Judge**